Chas. H. Eyster, Decatur and Gibson & Gibson, Birmingham, for appellant.

61 So.2d 448
### LOUISVILLE & N. R. CO. v. CAMP.
#### 6 Div. 332.

Supreme Court of Alabama.
Oct. 23, 1952.

Rehearing Dismissed by Agreement
Dec. 1, 1952.

Jackson, Rives, Pettus & Peterson, Birmingham, for appellee.

BROWN, Justice.

Action on the case by appellee, an employee of the defendant railroad company, to recover damages for personal injuries alleged to have been received by the plaintiff in consequence of plaintiff's falling from a tank car constituting a part of the defendant's train, while the train crew was engaged in making a flying switch to place said tank car on the sidetrack of the Texas Oil Co., known as "Walcan" or "Texas Switch", located 3½ miles from Argyle between Chattahoochee and Pensacola, Florida.

The counts of the complaint on which the case was tried charge the defendant with a violation of the Safety Appliance Act of Congress, now embodied in 45 U.S.C.A. as §§ 2–11, in that the defendant on June 15, 1950, hauled said tank car as a part of its train on which the plaintiff was engaged in his work in interstate commerce with an "inefficient hand brake" and, as a proximate consequence of such violation, he received the personal injuries and damages catalogued in said counts. The defendant pleaded the general issue in short by consent with leave to give in evidence any matter which if well pleaded would constitute a defense with like leave for the plaintiff to reply. The trial resulted in a jury verdict assessing the plaintiff's damages at $35,000, on which, after motion for new trial duly made and overruled with exceptions reserved, the judgment of the court was entered. Hence this appeal.

While numerous assignments of error are made on the record, on all of which appellee joins issue, the appellant only insists upon and argues assignment of error number three. Appellant concedes that "the work was in furtherance of interstate commerce and that plaintiff did sustain a fall and certain injuries on the date alleged." Following this concession, the appellant states its contention in brief as follows:

"It was the contention of the plaintiff at the trial that, while he was engaged in applying the hand brake on the tank car in question the wheel which he was turning clockwise to tighten the brake suddenly ceased resisting his pressure and spun or rotated rapidly in a clockwise direction, throwing him off balance and causing him to fall from the cat-walk or platform of the car to the ground. The sole evidence in support of this version of the accident, was plaintiff's testimony at the trial. No single circumstance or fact tending to confirm or strengthen this testimony appears anywhere in the record. Many facts and circumstances, however, stand undisputed to the contrary, so that, we submit, no unbiased mind could be *reasonably satisfied* that the plaintiff's testimony was true. * * *

"The question we shall endeavor to present under this assignment of error is that of the sufficiency of that evidence to support the verdict in the case at bar, as against the overwhelming weight of the evidence against it. We earnestly submit that it was insufficient to afford a reasonable and rational basis for the verdict.

"The hand brake claimed to have failed was a simple mechanical device, described in detail in the testimony. It consisted of a vertical shaft topped by a wheel to be turned manually. Rotation of the shaft clockwise by turn-

ing the wheel wound around it a heavy chain to the other end of which was fastened a 'stirrup'. The tension or pressure placed upon one end of the chain by the rotation of the shaft brought against the wheel of the car the pressure of the stirrup. By the friction thus obtained the turning of the car wheels were slowed and stopped. The device is identical in principle and similar in action to the simple brake used on farm wagons and drays. It is a heavily constructed—almost a crude—appliance. Unlike the more modern electric, pneumatic, hydraulic or electronic machines, which may fail without warning for reasons not fathomable by ordinary men, the railroad hand brake is simple—it is no more capricious than the wagon brake it so closely resembles.

"This uncomplicated instrument on the tank car which the verdict finds inexplicably failed to function and thereby proximately caused the plaintiff's injury, had no defect made known by the evidence. True, the plaintiff testified that the chain was a trifle longer than such chains ordinarily are. But the evidence is clear that the chain was within normal and ordinary limits, and the plaintiff himself testified that he had drawn all the slack out of it immediately before the alleged failure, by tightening it until it was just clear of the car wheels. It nowhere appears what, if any, effect the length of chain did or could have had upon the operation of the brake, either generally as an efficient brake, or particularly upon the occasion of plaintiff's fall. Thus the influence of the length of the chain upon the alleged failure of the brake, if any, is a matter of conjecture.

"The brake in question, alleged to have been the offending appliance, was actually operated no less than four separate times within the time consumed by the train's moving from three or four miles on the main line and conducting a brief switching operation at Walcan or Texas Switch. At least three of these operative tests occurred within a handful of minutes—two of them within seconds—of each other. For the fact that the brake worked efficiently on two of these occasions we have the testimony of the plaintiff himself. At Argyle, the stop last made before the train reached Walcan Switch, plaintiff checked the brake in the presence of Conductor McCaskill by turning the wheel until the brake was tight. He found it in good working order, and so reported. Again, at Wicke, some three hundred feet from the Walcan Switch, immediately before he cut the tank car loose to roll into the switch, he tightened the brake to a point just clear of the wheels by rotating the brake wheel. Again there was not the slightest abnormality or lack of efficiency. Nevertheless, he testified, and the jury believed, a moment later the brake would not slow the movement of the car, and 'something gave way' while he turned the wheel clockwise, so that the wheel spun *in that direction* and he was thereby thrown off the car. This testimony suggests a sudden break of one of the parts of the brake or a slipping out of alignment of some part. Yet so immediately after plaintiff's fall that the tank car had rolled only a few feet along the switch track the brake again functioned perfectly. Another employee, although less experienced in its use than plaintiff, mounted the car, turned the same brake wheel in the same way, and immediately brought the car to a stop. Not only did he bring it to a stop easily and normally, but he did so as it rolled down hill, and the brakes thereafter held it stationary on the incline. These are positive, undisputed physical facts. In the face of them, testimony that the brake was 'inefficient'—defective in some way—is simply incredible. We can understand that a hand brake could operate efficiently at one moment and fail the next. But believe that it could first fail and then seconds later return to efficiency we cannot, nor, we submit, can any reasoning man. To do so is to envision a defective mechanical device which can repair itself. * * *"

This argument is answered by appellee's brief as follows: "Counsel for appellant apparently find it difficult to understand how the hand brake could have apparently operated properly on the two occasions that Camp tested it before the accident and again when Fireman Barton applied the brake immediately after the accident when, on the other hand, it failed to function properly at the time Camp was injured. This is not at all difficult to explain. The car was standing still when Camp tested the brake before the accident. There was no friction between the brake shoes and the wheels of the car; there was no jerking, wiggling or vibration of the brake staff on either of these occasions. The balling up of the brake chain around the brake staff, causing the laps of the chain to lap one on top of the other resulting in the laps slipping off the laps underneath was an occurrence that necessarily would not happen every time the brake was operated. Rather, it was the type of an occurrence that would probably occur on infrequent occasions. Obviously the chain did not ball up or slip off when Camp tested it while the car was standing still. The jury could infer that it did ball up and slip off the brake staff on the occasion of the accident. Then the car was in motion at a speed of eight to ten miles per hour and the application of the brake shoe to the wheels would cause a friction which, as testified by Fireman Barton, caused a jerking or wiggling of the brake staff. Such movement of the brake staff would necessarily tend to cause the brake chain to slip off the laps underneath as a result of such vibration, jerking or wiggling of the brake staff. After this happened when Camp was injured, then when Fireman Barton stopped the car as it was easing backward at two or three miles per hour, the chain lapped properly around the brake staff without balling up or slipping off. This is the reasonable inference to be drawn from the evidence. It is not the case, as counsel for appellant argue, of a mechanism being defective and repairing itself * * *."

While in the circumstances disclosed by the evidence it may be said that it was not within the reasonable province of the jury to conclude that the hand brake in question was a self-repairing mechanical device, nevertheless, we can envision that if the chain on said brake, as plaintiff's evidence tended to show, was too long or double the proper length which required ten turns of the brake shaft instead of four or five to set the brake, the accumulation of the coils around the brake staff would probably cause the outer coils to slip and relax the tension, with the result indicated by plaintiff's testimony.

 The question under consideration related to matters of common observation and experience and the weight and credibility of the testimony was for the jury. Hence we are not in a position to affirm error in the court's action in overruling the motion for a new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738; Southern Railway Co. v. Kirsch, 150 Ala. 659, 43 So. 796; National Biscuit Co. v. Wilson, 256 Ala. 241, 54 So.2d 492; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.