(77 South. 235)

MOBILE ELECTRIC CO. v. FRITZ.

(1 Div. 979.)

(Supreme Court of Alabama. Nov. 15, 1917. Rehearing Denied Dec. 24, 1917.)

1. DEATH &blacklozenge;75—WANTONNESS—PROOF.

Wantonness in an action for damages for death must generally be presumed or inferred from proof of other facts, and from all the attending circumstances, not being susceptible of direct proof.

2. NEGLIGENCE &blacklozenge;11—"WANTONNESS."

Wantonness is an act or omission under circumstances known to be likely to result in injury, and whether a thing is wantonness or simple negligence depends largely on the character of a business engaged in, but it is essential that there be present consciousness, which is not to be implied from a mere knowledge of the dangerous situation.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wantonness.]

3. DEATH &blacklozenge;99(1) — EXCESSIVENESS OF DAMAGES—PASSION OR PREJUDICE.

A verdict of $17,500 for death *held* not so large as to show prejudice or passion where deceased was killed by a live wire lying in the street.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Action by Emile F. Fritz, as administrator, etc., against the Mobile Electric Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Palmer Pillans, of Mobile, for appellant. Harry T. Smith & Caffey, of Mobile, for appellee.

MAYFIELD, J. The action is under the homicide statute to recover damages for defendant's wrongfully causing the death of plaintiff's intestate. The wrong relied upon for cause of the death was defendant's allowing a heavily and dangerously charged electric wire to fall, or remain down, in a public street in the city of Mobile, with which wire deceased, while using the street, came in contact, and was thereby killed. One count relied upon wantonness in defendant's allowing the wire to fall or to remain down while it was so dangerously charged with electricity; while the other charged only simple negligence.

There was a severe wind and electric storm in Mobile on the night of the accident;

and to it, as an act of vis major, for which the defendant was not responsible, the defendant ascribed the falling of the wire, setting up lack of knowledge and opportunity to remove the wire or to cut out the circuit before the fatal accident happened. It is sufficient to say that much evidence was offered by both parties on the trial upon this issue, and resulted in a finding thereon by the jury in favor of the plaintiff, without any error of law intervening, sufficient to set aside the finding. The trial resulted in a verdict in favor of the plaintiff for $17,500.

Defendant moved for a new trial on the grounds, among others, that there was no evidence to support a finding under the wanton count, and, second, that the verdict was excessive in amount. This motion was heard, and was denied by the trial court, and defendant appeals, assigning errors as to the ruling on the motion for a new trial. As both questions were raised and insisted upon in the motion for a new trial, and they are the main if not the only questions insisted upon by appellant as for error, we will proceed to treat these two questions.

[1] While there is much evidence in the record tending to acquit defendant of all wrong, wanton or negligent, yet there is much which, if believed by the jury, would support a verdict under either count. Of course wantonness is scarcely susceptible of direct proof, and must generally be presumed or inferred from proof of other facts and from all the attending circumstances; and we are not prepared to say that the jury were wholly unauthorized to infer wantonness from the conduct of the defendant's agents as alleged in the wanton count.

[2] When an act is done or omitted under circumstances and conditions known to the person that his conduct is likely to or probably will result in injury, and through reckless indifference to consequences, or consciously and intentionally one does a wrongful act, or omits an act which he ought to have done, the injury inflicted may be said to be wanton. In such cases it is, however, essential that the act done or omitted should be done or omitted with a knowledge and present consciousness that injury would probably result, and this consciousness is not to be implied from a mere knowledge of the dangerous situation. M. J. & K. C. R. R. Co. v. Smith, 153 Ala. 127, 45 South. 57, 127 Am. St. Rep. 22.

Electricity is one of the most insidious and violent, and at the same time one of the most useful, forces known to man. It is, to use the language of the Supreme Court of North Carolina (Mitchell v. Raleigh Electric Co., 129 N. C. 166, 39 S. E. 801, 55 L. R. A. 398, 85 Am. St. Rep. 735):

"The most deadly and dangerous power recognized as a necessary agency in developing our civilization and promoting our comfort and business affairs. It differs from all other dangerous utilities. Its association is with the most inoffensive and harmless piece of mechanism, if wire can be classified as such, in common use. In adhering to the wire, it gives no warning or knowledge of its deadly presence; vision cannot detect it; it is without color, motion, or body; latently and without sound it exists, and, being odorless, the only means of its discovery lie in the senses of feeling, communicated through the touch, which, as soon as done, becomes its victim."

Where from the nature of a business, danger to life, and especially to the lives of many or of the public, is great, common prudence, as well as the laws of humanity, requires a degree of care and watchfulness to be exercised, commensurate with the attendant danger. A given act or course of conduct, under existing and surrounding circumstances, may be the exercise of reasonable care and prudence, while the same act or conduct, under different surrounding or attending circumstances, may be simple negligence, or may even amount to wanton conduct. So viewing the evidence in this case, we are not willing to affirm that there was error in submitting the question of wantonness to the jury.

[3] As to the verdict's being excessive, the figures themselves show that it is very large—much larger than is common in homicide cases, in which no compensatory damages can be awarded. As we have often said, such damages being purely punitive, and the statute saying that the amount shall be such as the jury may assess, it is obvious that no definite amount or standard is afforded by the statutes as to any particular case. The amount, of course, may be in some measure proportioned to the degree of culpability; and as both of these questions are to be found by the jury in the light of the evidence, the court cannot disturb the finding, unless it can say that the verdict or the amount was induced or reached on account of prejudice, passion, or other improper motive or cause. As we have said, the evidence in this case would warrant a finding of wantonness on the part of the defendant, and this fact renders it difficult to say that the verdict for $17,500 damages is excessive punishment. While it is larger than verdicts usually inflicted in such cases, it is not unprecedented, nor so unusually large as to satisfy us that it was influenced by, or infected with, bias, prejudice, passion, or other improper motive or influence swaying the jury. It may be that the jury considered that this amount was necessary to inflict adequate punishment on this defendant, which is engaged in a public service of course, but a service and business which, if not conducted in a careful and prudent manner, will greatly jeopardize the lives of the people who use the streets of Mobile. As the amount of the verdict and the severity of the punishment are graded according to the degree of culpability, and the jury were authorized to find the highest degree of culpability, we cannot know that the verdict was not based on such a finding. If they found such a degree of blame, worthiness, then, of course, the severest punishment might be awarded. While,

of course, a verdict may be so large as to show that it was influenced by improper motive, and not meted as deserved punishment, yet we are not convinced that such was the case in this instance, notwithstanding we feel that had the matter been left to us we would not have inflicted a punishment so severe. The law has seen fit to expressly say that the amount of the verdict in such cases shall be such as the jury may assess. Moreover, the judge who presided at the trial and saw and heard the witnesses declined to set the verdict aside, or to suggest its reduction, as he might have done. Giving due weight to all these considerations, we are unwilling to disturb the verdict and judgment.

Affirmed.

ANDERSON, C. J., and SOMERVILLE, and THOMAS, JJ., concur.