54 So.2d 492

**NATIONAL BISCUIT CO. et al. v. WILSON.**

**6 Div. 34.**

Supreme Court of Alabama.

Oct. 11, 1951.

London & Yancey, Geo. W. Yancey and Jas. E. Clark, all of Birmingham, for appellants.

Taylor, Higgins, Windham & Perdue, Birmingham, for appellee.

244

LAWSON, Justice.

This is an appeal from a judgment rendered in the circuit court of Jefferson County against National Biscuit Company, a corporation, and Raymond Carter Sellers, defendants below and appellants here, and in favor of Jessie Beatrice Wilson, as administratrix of the estate of Grady Smith Wilson, deceased. The suit was brought under the so-called homicide or wrongful death statute. § 123, Title 7, Code 1940.

The complaint as originally filed contained two counts, the first charging simple negligence, the second charging wantonness. The second count was stricken on motion of plaintiff and the cause went to the jury on the first count, which count alleged in substance that on January 17, 1948, while plaintiff's intestate was a pedestrian on Morgan Bridge, near Childersburg, on Highway 91, the defendants ran a motor vehicle against plaintiff's intestate, and as a proximate consequence thereof he was so injured that he died. It is alleged that intestate's death was caused as a proximate consequence of the negligent operation of a motor vehicle by defendants.

Demurrer was overruled, whereupon defendants filed a plea in short by consent in the usual form. Upon issue being joined, trial was had before a jury, resulting in a verdict and judgment for plaintiff in the amount of $10,000.

Defendants' motion for new trial having been overruled, they have appealed to this court.

The action of the trial court in overruling demurrer to the complaint is not assigned as error.

It is without dispute that on the afternoon of January 17, 1948, plaintiff's intestate was hit by an automobile driven by the defendant Sellers while he was acting within the line and scope of his authority as an employee of the corporate defendant. Plaintiff's intestate died within a short time after he was hit.

Appellants insist that the trial court erred to a reversal in refusing to give at their request the general affirmative charge with hypothesis. They contend that such charge should have been given on two theories: First, that there was no evidence to show that the defendants were guilty of any negligence which proximately caused intestate's injury; and, second, that the plaintiff's intestate was guilty of negligence which proximately contributed to his injury.

Where, as here, it is insisted that the affirmative charge should have been given for the defendant, we review the tendencies of the evidence in the light most favorable to the plaintiff, and this without

any regard to the view which we may have as to its weight, and allow such reasonable inferences as the jury was free to draw, not those which we think to have been the more probable. Cornelison v. Logan, 253 Ala. 618, 46 So.2d 215.

Plaintiff's intestate, an employee of the State Highway Department, was superintendent of a convict road camp located a short distance north of the town of Childersburg and about one-half mile south of Morgan Bridge, which spans the Coosa River as a part of Alabama Highway 91. The bridge is approximately 1,000 feet in length, is level, and the highway approaches at both ends of the bridge are straight and level for a distance of approximately a mile and a half or two miles. The floor of the bridge is made of concrete, the approaches thereto of asphalt.

The day of the accident was extremely cold. Snow had been falling and traffic had been held up due to the snow and the formation of ice on the roads. Between 5:00 and 5:15 p. m., a Highway Patrolman who had just driven across Morgan Bridge in a southerly direction notified Wilson, the deceased, that the bridge was covered with ice. Wilson, a highway foreman, and ten convicts proceeded to the bridge for the purpose of removing the ice by the use of shovels, brooms, and chemicals. Work was begun on the south end of the bridge and had progressed only a short distance when a car entered the north end of the bridge. Soon after it entered the bridge, this car began to skid and finally came to rest at a point near where the men were working. The car had its parking lights on at the time, as it was "dusk dark," but visibility was such that one could see from one end of the bridge to the other. The car stopped parallel with the bridge, up against its west side.

Approximately two minutes after the car above referred to had stopped on the bridge, the car driven by the defendant Sellers came onto the north end of the bridge. It soon began to skid. After skidding a considerable distance, Sellers' car hit deceased and pinned him up against the rear of the other car and the west side of the bridge.

There is no direct evidence that Sellers knew the floor of the bridge was covered with ice, but it does appear that he knew the roads in the vicinity of the bridge were slippery due to ice formations. Sellers had been out in his car all day in the inclement weather. For a considerable distance north of the bridge, the road on which Sellers was travelling had ice formations on it. Sellers knew of this condition and admitted that the frozen places in the road were very slick. He testified that as he approached the bridge he was travelling at about twenty or twenty-five miles an hour and that he slowed down very little. According to Sellers, his car did not begin to skid until he had driven 200 or 300 feet on the bridge when, upon observing some object on the bridge, he put on his brakes.

But the evidence for the plaintiff is to a different effect. As to the speed of Sellers' car at the time it came on the bridge, the jury could have found from the evidence that it was travelling as fast as sixty miles an hour. Likewise, the jury could have found from the evidence that Sellers' car began to skid practically at the moment it came upon the bridge and skidded a distance of approximately 950 feet until it hit deceased, after weaving from side to side and striking the sides of the bridge from seven to ten times.

In 113 American Law Reports, on page 1002, is an extensive annotation on the subject of "liability for damages or injuries by skidding motor vehicle." It will be found by reading it that the courts generally hold that accidents produced exclusively by skidding on an ice-covered surface of a road, and which are not contributed to by nonobservance of some other precautionary requirement, will not support a cause of action based on negligence.

But it is also the general rule that one driving on a slippery highway must take that condition into consideration and if there is evidence tending to show that the skidding was superinduced or accelerated by him, then it is for the jury to determine whether on not the skidding resulted from the driver's negligence. Hewitt's Adm'r v. Central Truckaway System, 302 Ky. 459, 194 S.W.2d 999; Vunak v. Walters,

157 Pa.Super. 660, 43 A.2d 536; Hill v. Bardis, 96 N.H. 14, 69 A.2d 1; Brown v. Arnold, 303 Mich. 616, 6 N.W.2d 914; Humphries v. Complete Auto Transit, Inc., 305 Mich. 188, 9 N.W.2d 55; Zeinemann v. Gasser, 251 Wis. 238, 29 N.W.2d 49; Stanford v. Holloway, 25 Tenn.App. 379, 157 S.W.2d 864; De Antonio v. New Haven Dairy Co., 105 Conn. 663, 136 A. 567; Sigmon v. Mundy, 125 W.Va. 591, 25 S.E.2d 636; Barret v. Caddo Transfer & Warehouse Co., 165 La. 1075, 116 So. 563, 58 A.L.R. 261; Tutewiler v. Shannon, 8 Wash. 2d 23, 111 P.2d 215; Zeigler v. Ryan, 65 S.D. 110, 271 N.W. 767; 5 Am.Jur. 654, § 273; 1 Blashfield, Cyc. of Automobile Law and Procedure (Part 2), § 653, p. 518.

In Kaczmarek v. Murphy, 78 Ohio App. 449, 70 N.E.2d 784, 786, the rule is stated as follows:

"The mere skidding of an automobile on an icy street does not necessarily prove negligence of the driver of the car. See Kohn, Adm'x v. B. F. Goodrich Co., 139 Ohio St. 141, 38 N.E.2d 592; Satterthwaite v. Morgan, Jr., 141 Ohio St. 447, at page 453, 48 N.E.2d 653.

"Skidding, however, may so occur in connection with acts or omissions of the operator as to warrant a finding of negligence in the operation of a car. And if there is evidence showing or tending to show that an automobile skidded into a collision with another car, lawfully operated on a highway, because of a lack of ordinary care of the driver of the skidding car in the operation thereof, such circumstances make a case for the jury. For, while proof that the car skidded is not necessarily proof of its negligent operation, proof of circumstances which so connect the skidding with such operation that reasonable minds could reach different conclusions as to whether the car was operated properly, makes a case for a jury. If the negligent operation of an automobile caused a car to skid, and damage to others from such skidding results, such negligence, if established, has the same consequences as to liability as negligence of any other character."

The rule is stated in 5 Am.Jur. 654: "The inquiry in cases of skidding is as to the driver's conduct previous to such skidding. The speed of the automobile prior to the skidding and the care in handling the automobile, particularly in the application of brakes, are factors to be considered in determining whether or not there was an exercise of due care. * * *."

Without question, the jury could have readily concluded from the evidence that driving conditions at the time of this accident were hazardous. Sellers' own testimony supports such a finding. He was confronted with driving on a road which he knew had ice formations on it, although he may not have known that the floor of the bridge itself was covered with ice.

Whether Sellers met the conditions confronting him as he travelled on a slippery highway as an ordinarily prudent man would meet them was, we believe, properly left to the jury. We hold, therefore, that the defendants were not entitled to the general affirmative charge on the theory that there was no evidence to support a finding of negligence on their part.

We come now to consider the insistence of appellants here, defendants below, that they were entitled to the affirmative charge on the theory that the evidence showed as a matter of law that plaintiff's intestate was guilty of negligence which proximately contributed to his injury.

This insistence is predicated on the claim that Wilson, the deceased, was in charge of the men who were working on the bridge and that he failed to give proper warning of the fact that he and the men under him were working on the bridge.

The jury could have found from the evidence that immediately upon reaching the bridge, the deceased ordered that signs be placed on the approaches to the bridge. However, the evidence in this respect is extremely meager and some of plaintiff's own witnesses testified that such warning signs were not put out. However, the jury could unquestionably have found from the evidence that Wilson directed a convict to stand at the south end of the bridge and sent another convict toward the north end of the bridge with a red flag with which to warn motorists proceeding in a southerly direction. At the time of the accident a

convict was flagging traffic toward the north end of the bridge, although he had not reached the approach to the bridge. But visibility was such that one approaching the bridge from the north, if keeping proper lookout, could have seen this warning signal before reaching the bridge. Sellers testified that he did not see the flagman but, as before indicated, there was ample evidence to support a finding by the jury that the flagman was at a position where, if Sellers had been keeping the proper lookout, he would have seen him.

We are of the opinion that the question of contributory negligence was properly left to the jury.

■ The appellants urge with great earnestness that the trial court was in error in overruling the motion for a new trial because the verdict of the jury was contrary to the great weight of the evidence. Where there is evidence, which if believed justified the verdict, the motion for new trial is properly overruled. Johnson v. Louisville & N. R. Co., 240 Ala. 219, 198 So. 350; Kurn v. Counts, 247 Ala. 129, 22 So.2d 725. Verdicts are presumed to be correct and no ground of new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the evidence. Cobb v. Malone, 92 Ala. 630, 9 So. 738. It is recognized by this court that when the presiding judge refuses, as here, to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. Bell v. Nichols, 245 Ala. 274, 16 So. 2d 799; Southern Ry. Co. v. Kirsch, 150 Ala. 659, 43 So. 796; Smith v. Smith, 254 Ala. 404, 48 So.2d 546. After allowing all reasonable presumptions in favor of the correctness of the verdict, we cannot say that the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. Cobb v. Malone, supra.

■ We cannot say that under the evidence the amount of damages is excessive or that the jury was actuated by bias, passion or prejudice. The trial court heard the evidence and let the verdict stand. We shall not disturb it. City of Mobile v. Reeves, 249 Ala. 488, 31 So.2d 688, and cases cited.

It is insisted that the trial court erred in failing to grant a new trial on the ground that the verdict of the jury was contrary to the law as given them in certain written charges and in the court's oral charge. The argument in support of this insistence is in effect nothing more than a repetition of the argument advanced in support of the contention that defendants were entitled to the general affirmative charge with hypothesis, which question we have heretofore treated.

■ In closing argument to the jury, counsel for plaintiff made the following statement: "This case is against the National Biscuit Company, a corporation, and Mr. Sellers. They are the ones who have written the little black death certificate of her husband." Counsel for defendants objected as follows: "Now, we object to that, may it please the Court, that they have written the little death certificate. That is the death certificate he holds before them. We object to that argument as improper." The objection was overruled and exception reserved. The death certificate had been introduced in evidence and the argument of counsel for the plaintiff was nothing more than a statement that the defendants had caused the death of plaintiff's intestate. This we think was legitimate argument under the evidence.

■ In brief filed here on behalf of appellants, complaint is made of other parts of the argument of counsel for plaintiff. In some instances no objection was interposed; in other instances, objections of counsel for defendants were sustained and the argument excluded. The contention of appellants that because of such argument this case should be reversed is answered in the following quotation from the opinion in the case of Pure Milk Co. v. Salter, 224 Ala. 417, 420, 140 So. 386, 388.

"Under point 2 in his brief the defendants group assignment of errors numbered 14, 15, 16, 17, and 18, all presenting the question of the correctness of the court's action in overruling motion of defendants for a new trial, predicated upon the improper remarks of plaintiff's attorneys in their arguments to the jury. That the attorneys for plaintiff, in the objected to portions of

their argument, exceeded the bounds of legitimate or permissible argument there can be no doubt. The record shows that in each instance, where objection was made and ruled upon, the court sustained the objections. No further action was invoked, and no further repressive measures were asked for by defendants. It would appear that the defendants were content with the ruling of the court in sustaining their objections. No hint or suggestion was made that the case be taken from the jury and a mistrial entered. This undoubtedly placed the defendants, whether so intended or not, in the attitude of speculating on a favorable verdict; and they would be so held unless the argument was 'so grossly improper and highly prejudicial, that its evil influence and effect could not be eradicated from the minds of the jury by any admonition from the trial judge.'

"In the case of American Ry. Express Co. v. Reid, 216 Ala. 479, 113 So. 507, many decisions of this court, touching the point under consideration, were reviewed. In that case, the trial court overruled the objection of the defendant, as last made, to certain portions of the argument of plaintiff's attorney, and an exception was duly reserved. In the instant case, the objections were sustained, where any ruling was made by the court and no further action on the part of the court was requested. The question then is, in this case, on consideration of the motion for a new trial: Were the remarks of counsel so improper and prejudicial as to be ineradicable from the minds of the jury, and thus to require a new trial?

"After a careful consideration of the offending remarks, we cannot affirm error on the part of the court in overruling defendants' motion for new trial, in so far as the same is predicated upon those grounds."

We have considered all assignments of error properly presented for our consideration under the rules that obtain. We find no reversible error and the judgment appealed from is affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER, STAKELY and GOODWYN, JJ., concur.