SUNNYLAND CONTRACTING Co., INC., et al. *v.* DAVIS, et al.

No. 39282          October 11, 1954          74 So. 2d 858

November 15, 1954        75 So. 2d 638

November 22, 1954        75 So. 2d 923

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellants.

*Louis Bishop, Stanford Young,* Waynesboro, for appellees.

KYLE, J.

This case is before us on appeal by the Sunnyland Contracting Company, Incorporated, and its insurance carrier from a judgment of the Circuit Court of Wayne County affirming an order of the Workmen's Compensation Commission, awarding death benefits under the Mississippi Workmen's Compensation Act to Mrs. Leona Kelly Davis, surviving widow, and the three minor children of William Truman Davis, an employee of the Sunnyland Contracting Company, Incorporated, who died on July 5, 1951, while engaged in the performance of his duties as a member of a drilling crew.

Three witnesses testified on behalf of the claimants during the hearing before the attorney-referee. J. C. Hinton, a member of the drilling crew, testified that on the morning of July 5, 1951, he and the deceased were carrying boards to be laid for a pump matting. The boards were 3 x 12, 14 to 20 feet long, and weighed from 300 to 500 pounds. Hinton stated that while he and Davis were moving one of these planks Davis stumbled and dropped his end of the plank and said he thought he had hurt his chest. A short time thereafter the driller in charge instructed Davis to dig a suction ditch a short distance from the drilling location. Davis commenced to dig the ditch, and about an hour later a truck driver found Davis' body lying near the roadside approximately 100 yards from the drilling rig.

W. D. Hinton, who was also a member of the drilling crew, testified that during the morning of July 5th he helped Davis and J. C. Hinton move some boards and beams at the drilling site. Some of the timbers were very heavy. While Davis and J. C. Hinton were moving one of these heavy pieces of timber, "J. C. Hinton sort of

stumbled and fell, jerking Mr. Davis and he sort of grunted and grabbed himself in the chest and staggered, but we never thought much about it at the time until after he was dead." M. A. Allgood, who was working on the same job, testified that Davis and J. C. Hinton were moving the timbers, and that the timbers were very heavy. He did not see Davis stumble or fall; but he stated that he talked to Davis about thirty minutes before his death, and Davis was complaining, "saying he wished he had stayed at home because the work was so hard and heavy on him that he could not take it and that he hurt himself." This was about 12 o'clock noon.

Dan Beasley and J. C. Skipper, the rig-foreman and the driller, testified as witnesses for the appellant. Beasley stated that Davis had been working for the company five days. He had worked for the company prior to that time, but only when the company needed extra men. Beasley stated that the matting or timbers to support the pumps and machinery had been laid on July 4, and that Davis helped him move some drill subs during the morning of July 5, and made a trip to Waynesboro for him. Beasley stated that he left the drilling site between 10 and 11 o'clock and was not present when Davis' body was found near the roadside. No report was made to him that Davis had stumbled while carrying a piece of timber, or that Davis had complained of a pain in his chest during the morning. Skipper testified that Davis came to work about 8 o'clock. He did not know what duties Davis performed during the morning, but about twenty minutes before 1 o'clock he instructed Davis to dig a suction ditch, which was to be 18 inches wide, 6 x 8 feet long and 2½ feet deep. A few minutes later Davis' body was found about 100 yards from the drilling rig. Skipper stated that the matting had been laid for the drilling rig on July 2d or 3rd, and that no timbers were handled on July 5 to his knowledge.

The medical testimony consisted of the testimony of Dr. William E. Weems of Laurel, who testified as a witness for the claimants, and the testimony of Dr. Joseph P. Melvin, Jr. of Jackson, who testified as a witness for the employer and the insurance carrier. Dr. Weems was requested to examine a Veterans Administration medical report, which showed the results of an examination of W. T. Davis made by the Veterans Administration on December 4, 1950. After examining the report, the doctor stated that the report showed that Davis at that time had a labile type of high blood pressure, that is to say, his blood pressure was up one day and down the next. The doctor stated that "high blood pressure will have its effect on the heart, throwing an extra load on the heart." In answer to a hypothetical question, based upon the testimony of the claimants' witnesses concerning Davis' lifting of the heavy planks a few hours before his death, the doctor stated in all probability Davis "had some accident, I mean some cardiovascular, some type of heart attack" caused by a strain. Dr. Joseph P. Melvin, Jr., stated in answer to the same hypothetical question, that in his opinion, Davis' death was probably caused by a heart attack, a coronary occlusion with myocardial infarction, sometimes referred to as coronary thrombosis, which is almost invariably associated with arteriosclerosis or hardening of the arteries, and the alleged exertion or strain undergone by the decedent probably did not contribute to or cause his death.

The attorney-referee in his findings of fact said:

"On the day in question, the deceased began his work as a laborer about eight o'clock. Prior to eleven o'clock the deceased helped the rig foreman move some drill subs and made a trip with the foreman to Waynesboro and drove a pick-up truck back to the job. All of the crew, including Davis, were busy moving and rigging up on the new location. The matting of heavy timbers was laid prior to July 5th. Some matting timbers may have been

moved on July 5th, but due to the conflict in the testimony and other factors not detailed herein, I do not make a finding of fact that the deceased sustained an accidental injury while carrying a heavy timber with J. C. Hinton on the date of July 5, 1951.'' But after summarizing other parts of the testimony, the attorney-referee stated his conclusion as follows: ''When all of the evidence is considered in the light of Workmen's Compensation decisions, it is the opinion of the attorney-referee that the evidence is sufficient to establish that the disability and death of the decedent was causally related to and arose out of his employment, and that he sustained an accidental injury within the meaning of the Act.'' The attorney-referee awarded compensation to the claimants, and the award thus made was approved by the full commission.

The appellants argue only one point as ground for reversal of the judgment of the lower court, and that is, that the appellees failed to establish by competent proof a causal connection between the decedent's work and his death. The appellants say that the medical testimony offered on behalf of the claimants consisted entirely of the expert testimony of Dr. Weems, and that Dr. Weems' testimony had no probative value for the reason that it was given in answer to hypothetical questions based upon the assumption that the decedent had sustained an accidental injury during the morning of July 5, 1951, while helping J. C. Hinton move some matting timbers at the drilling site, as testified by the claimants' witnesses, and the attorney-referee failed to find that the deceased had sustained such accidental injury on July 5 while engaged in moving such matting timbers. The appellants therefore contend that the opinion evidence of Dr. Weems was based upon a hypothetical statement of facts not shown to be true, and that such evidence should be disregarded. But we think that it cannot be said that Dr. Weems'

testimony was predicated upon facts assumed but not proved.

It is true that the attorney-referee in his findings stated that the matting of heavy timbers had been laid prior to July 5, although some matting timbers may have been moved on July 5, and that the attorney-referee did not make a finding of fact that the decedent sustained an accidental injury while carrying heavy timbers with J. C. Hinton on that date. Yet, the attorney-referee did state in his findings of fact that, when all of the evidence was considered, it was sufficient in his opinion to show that the decedent's death was causally related to and arose out of his employment.

The fallacy in the appellants' argument that Dr. Weems' testimony had no probative value for the reason that the attorney-referee failed to find that the decedent had sustained an accidental injury on July 5, while helping J. C. Hinton move some matting timbers, as testified by the claimants' witnesses, however, is due mainly to the fact that the Workmen's Compensation Act itself provides that "the Commission shall have full power and authority to determine all questions relating to the payment of claims for compensation." Section 18, Chapter 354, Laws of 1948. And this Court in the recent case of Railway Express Agency, Inc. v. Mrs. Christine W. Hollingsworth, et al., No. 39,272, opinion rendered October 4, 1954, has said that "the attorney-referee is no more than a facility for conducting the business of the commission and for all practical purposes the commission is the actual trier of facts."

The commission, in the case that we have here, had before it a complete transcript of the testimony of the witnesses, and it must be assumed that the action of the commission in making the award of compensation to the claimants was based upon their own conclusions as to what the testimony showed. It is true that there was a conflict in the testimony of the claimants' witnesses and

the testimony of the rig foreman and the driller as to whether the decedent helped J. C. Hinton move the heavy planks on the morning of July 5th. But we think there was ample evidence to justify a finding by the commission that the decedent had sustained such accidental injury; and in view of the facts testified to by the claimants' witnesses it cannot be said that the testimony of Dr. Weems had no probative value for the reason that it was based upon the assumed existence of facts which were not shown to be true.

It is also argued that Dr. Weems' testimony had no probative value for the reason that the testimony amounted to no more than a statement of a mere possibility that the alleged strain might have contributed to the heart attack. But we think there is no merit in this contention. The record shows that, in answer to the question whether a sudden strain, such as that described in the hypothetical question, "could in all probability have caused a heart attack of some kind and cause his death," the doctor said: "Well, I will say that if a man such as you described was subjected to a sudden strain such as an added insult (sic.) of a hundred pounds or so, and grabbed his chest and died soon thereafter, I would say that in all probability he had some accident, I mean some cardiovascular, some type of heart attack." The doctor was later asked the question: "Well, would you say that in your opinion, I mean, that a strain of this type would aggravate any type of heart trouble that might be existing?" His answer was, "I would say it certainly could aggravate it, yes, sir."

This case in our opinion is controlled by the opinion rendered by this Court in Pearson, et al. v. Dixie Electric Power Assn., et al., 219 Miss. 884, 70 So. 2d 6, a case in which the facts were strikingly similar to the facts disclosed by the record that we now have before us.

In the Pearson case the record showed that the deceased came to his death while assisting a crew of other

workmen in cutting and clearing off a thick growth of shrubs and bushes from the right-of-way of the appellee's electric power line on August 23, 1951. Two days prior to that time Pearson had complained to his foreman during the 30 minute lunch period that he had "a burning hurt" in his chest, and he remained at home during the following day. He returned to work, however, on the morning of August 23rd. He worked with the right-of-way crew until noon, was off for a 30 minute lunch period, worked a very short while after lunch, and then rode in a truck about five miles to the location where he died. He had been working there only a short time cutting bushes, when he was seen walking away from the place where he was doing the cutting, and about 15 minutes later his body was found a few steps from where he had quit work. The attorney-referee after hearing the testimony allowed the appellants' claims, but the Workmen's Compensation Commission reversed the decision of the attorney-referee and disallowed the claim and the circuit court affirmed the order of the commission. This Court on appeal reversed the judgment of the circuit court and rendered judgment for the appellants on liability and remanded the case in order that the commission might fix the amount of the death benefits to be allowed; and in its opinion the Court said: "We are not unmindful of the argument on behalf of the defendants that it was incumbent upon the attorney-referee to base his conclusion on proof as to whether or not the work in which the employee was engaged had in any manner aggravated, accelerated or contributed to his death. However, the proof required is not confined to direct testimony. A fact may be established by the clear preponderance of the testimony in connection with all the surrounding conditions and circumstances even though the proof is purely circumstantial."

We think that the commission, in the case that we have here, was justified in holding that the evidence

was sufficient to prove circumstantially that Davis' death arose out of and in the course of his employment. The work that he was doing was manual labor and required considerable physical exercise. Dr. Weems' testimony indicated very clearly that in his opinion the physical exertion or strain was a contributing factor causing Davis' death. It is true that the opinion expressed by Dr. Weems was not concurred in by Dr. Melvin, but we think there was ample evidence to support the finding of the commission that there was causal connection between the decedent's work and his death. The judgment of the lower court is, therefore, affirmed.

Affirmed.

*McGehee, C. J.,* and *Hall, Arrington* and *Gillespie, JJ.,* concur.

### ON MOTION FOR ALLOWANCE OF ATTORNEYS' FEE

GILLESPIE, J.

This claim for death benefits was successfully prosecuted by attorneys for claimants. The widow and three minor children are the beneficiaries of the award. The motion states that the attorneys had a contract for a fee of fifty per cent of the amount of recovery. We are called upon to fix the percentage to be allowed as full compensation to attorneys for claimants and the method of payment.

The claim was controverted and claimant's attorneys prosecuted the case before the attorney-referee, the whole commission, the circuit court and this Court. Additional services, within the meaning of Section 6998-32(c) of the Mississippi Code of 1942, were rendered by the attorneys. Said code section also provides, in part, that "in all instances, fees shall be awarded on the basis of fairness to both attorneys and client. Although exceptions may be made in the interest of justice, it shall be deemed conducive to the best interest of all concerned

for the commission to approve contracts for attorney fees voluntarily entered into between attorneys and client, within the limitations hereinabove set out.''

■■■ The limitation of twenty-five percent is set by the statute for services before the commission. That limitation is not applicable for the additional services rendered before superior courts. ■■■ Where minors are involved, the courts must necessarily determine the fees; and any contract for fees does not bind the minors. We must, therefore, determine the amount of the fees on the basis of fairness to attorney and client. All of the justices are of the opinion that the fee for all services of claimants' attorneys in cases such as this should not exceed one-third of the sum recovered. ■■■ We therefore allow as full compensation for all services rendered in this cause by the attorneys for claimants a sum of money equal to thirty-three and one-third per cent (33⅓%) of all compensation benefits now due and payable, plus a sum of money equal to a partial lump sum settlement of thirty-three and one-third per cent of the present value of all future compensation, said partial lump sum settlement to be determined and computed as provided by Section 6998-19(j), Mississippi Code of 1942, and which shall be deducted from payments last to become due the claimants.

Motion sustained and attorneys' fee fixed at thirty-three and one-third per cent (33⅓%).

All Justices concur.

ON MOTION TO CORRECT JUDGMENT

McGehee, C. J.

The appellants in the above styled cause have filed a motion to correct the judgment entered herein pursuant to a decision on October 11, 1954, affirming the above styled cause by eliminating therefrom that portion of said judgment which provides for the allowance to ap-

pellees of statutory damages at the rate of five per centum, and which provides for interest on unpaid installments of the compensation benefits, on the ground that the judgment appealed from was not one "for a sum of money" within the meaning of Section 1971, Code of 1942. ▮▮▮ The decision on this motion is controlled in the main by the decision on a similar motion in the case of Railway Express Agency v. Mrs. Christine W. Hollingsworth, et al., Cause No. 39,272, rendered on November 14, 1954, which overruled the cases of Mills v. Jones Estate, 213 Miss. 680, 54 So. 2d 496, and Stephens v. Moore, 215 Miss. 3, 60 So. 2d 391, to the extent mentioned in the opinion on the said motion in the case of Railway Express Agency v. Mrs. Christine Hollingsworth, et al., supra.

In the instant case the attorney-referee entered an order on July 25, 1953, in favor of the appellees, awarding them compensation "in the manner and method set forth in Section 9 of the Mississippi Workmen's Compensation Act, (Chapter 354, Laws of 1948), as amended." This order was based on a finding that the deceased employee was earning an average weekly wage of $60, and that his death arose out of and in the course of his employment, and a further finding that the deceased employee came to his death on July 5, 1951, and that the appellees were entitled to have the appellants, Sunnyland Contracting Co., Inc., as employer, and the Pacific Employers Insurance Co., as insurance carrier, pay to the appellees, Leona Kelly Davis, surviving wife, and to the natural guardian or other representative of James Vaughn Davis, Virgil Davis, and William Michael Davis, dependent children of the deceased employee, the compensation provided for as death benefits, "in the manner and method set forth in Section 9 of the Mississippi Workmen's Compensation Act, as amended," and as provided for in his order awarding such compensation.

The cause was heard on review by the full Commission, and a judgment was rendered by the full Commission on October 20, 1953, affirming the order of the attorney-referee. This judgment of the full Commission was appealed to the Circuit Court of Wayne County, and was affirmed by that court on November 30, 1953.

We are of the opinion that Section 1971, Code of 1942, supra, providing for the assessment of damages at the rate of five per centum on the amount of a money judgment when the same is affirmed here on appeal is applicable in the instant case for the reason that when the full Commission affirmed the order of the attorney-referee on October 20, 1953, and which order had allowed compensation ''in the manner and method set forth in Section 9 of the Mississippi Workmen's Compensation Act, as amended,'' after having determined the average weekly wage of the deceased employee and who were the beneficiaries of the award, the judgment of the full Commission became a judgment for a sum of money in the amount of the benefits definitely fixed by the said section of the Act. Therefore we depart from the holding in the case of J. & B. Manufacturing Company v. Cochran, 216 Miss. 336, 62 So. 2d 378, to the extent and to the extent only, that the decision in that case disallowed the five per centum damages on the thirteen weeks compensation that was recoverable in any event. We adhere to that decision in all other respects.

In the instant case we disallow the five per centum damages on the sum of $350 provided for under subsection (b) of Section 9 of Chapter 354, Laws of 1948, providing for ''Reasonable funeral expenses not exceeding three hundred fifty dollars ($350.00),'' and for the reason that the funeral expense is not definitely fixed by this section of the Workmen's Compensation Law referred to in the order of the attorney-referee, and the amount thereof is not shown by the record.

The five per centum damages is therefore allowed on all installments which have become due and now remain unpaid, since the rendition of the judgment of the full Commission on October 20, 1953. The allowance of the legal rate of interest on said unpaid installments must follow under the requirement of Section 39, Code of 1942, as held by the decision rendered on the motion to assess damages and interest in the case of Railway Express Company v. Mrs. Christine W. Hollingsworth, et al., supra, on November 14, 1954. Therefore the motion to correct the judgment in the instant case is sustained only as to the assessment of the five per centum and the interest on the funeral expense, not exceeding $350, and is overruled to the extent that we are asked to eliminate that portion of the judgment heretofore rendered in this cause which provides for the allowance to appellees of statutory damages at the rate of five per centum (5%), and which provides for interest on unpaid installments that are definitely fixed by Section 9 of Chapter 354, Laws of 1948, as amended. The order of the attorney-referee, when affirmed by the full Commission, and which refers to the said section of the statute which fixes the compensation, had the effect of fully advising the employer and its insurance carrier of the amount of compensation awarded.

Motion overruled in part and sustained in part.

All Justices concur.