82 So.2d 542

**Mrs. J. O. ENGLISH**

v.

**T. G. JACOBS, as Adm'r.**

4 Div. 754.

Supreme Court of Alabama.

June 16, 1955.

Rehearing Denied Sept. 22, 1955.

Jas. Garrett and Oakley, Melton, Jr., Rushton, Stakely & Johnston, Montgomery, and E. O. Griswold, Enterprise, for appellant.

C. L. Rowe, Elba, for appellee.

MAYFIELD, Justice.

This is an appeal from a jury's verdict and the judgment thereon, rendered by the Circuit Court of Coffee County. Plaintiff-appellee recovered a verdict under the homicide statute for the alleged wrongful death of plaintiff's intestate. The deceased was an invited guest in defendant's automobile. The complaint consisted of a single count founded on Section 123, Title 7, Code of Alabama 1940. Consequently plaintiff's recovery was for punitive damages.

This suit is necessarily governed by Section 95, Title 36, Code of Alabama 1940. The measure of defendant's duty to plaintiff's intestate was not to willfully or wantonly injure or kill her.

The only questions argued in appellant's brief are: (1) That the trial court committed reversible error in not giving the affirmative charge for the defendant at the conclusion of the evidence; and (2) that the trial court erred in failing to grant the defendant's (appellant's) motion for a new trial and set aside the verdict of the jury and the judgment thereon. There is no question of pleading or the introduction or rejection of evidence encompassed in this appeal. Stated another way, the sole point of controversy in this court is the sufficiency of the evidence to warrant the verdict and the judgment thereon entered by the nisi prius court.

In considering the question of the sufficiency of the evidence of wantonness to be submitted to the jury, this court must accept the adduced evidence most favorable to the plaintiff as true, and indulge such reasonable inferences as the jury was free to draw from the evidence. Wilson & Co., Inc., v. Clark, 259 Ala. 619, 67 So.2d 898. There are few conflicts in the testimony as to the chain of events that led to the tragic death of Carrie Elsa Jacobs. Where these conflicts appear, we are compelled to view

them in the light most favorable to the plaintiff.

Delineating the evidence most favorable to the appellee, we find that the tragedy occurred on 13 July 1951, at approximately 4:00 o'clock in the afternoon. On this day, the deceased, the defendant and a group of other ladies of Coffee County, were attending a club meeting at the home of Mrs. Rufus Wilson. The Wilson home is located some two miles from the paved highway and is connected thereto by a sand and clay road. At the time the deceased, the defendant, and the other ladies who attended the meeting arrived at the Wilson home the connecting road was dry and firm. During the club meeting a torrential rain fell which was described in the testimony as a "downpour". When the meeting concluded, the intensity of the rain had abated somewhat but was continuing with some degree of intensity. The condition of the connecting sand and clay road was described as wet and "really slick". The defendant had little experience in driving under adverse conditions and was aware of her inaptitude in this particular. As the ladies were preparing to depart from the Wilson home, Rufus Wilson warned the defendant that the roads were in a treacherous condition and offered to drive her car out to the concrete highway. The defendant stated that she had never driven over a slick road before but declined Mr. Wilson's offer of assistance.

The first car to leave the Wilson home was that of Miss Mamie Mathews. The defendant's automobile, with Carrie Elsa Jacobs as a passenger, followed at a distance of approximately 75 yards. At the defendant's invitation, two other ladies rode in her automobile along with the deceased. Mr. Wilson followed the defendant's automobile in his truck for the purpose of safely convoying the ladies to the main highway. While both automobiles were proceeding along the connecting road to the main highway, Miss Mathews' car reached a clay knob which was particularly slick and dangerous. The Mathews' car skidded but righted itself and proceeded forward. One of the other lady passengers in the defendant's automobile stated to the defendant that she was familiar with this particular strip of road and offered to drive her car through this hazard. The defendant declined this offer, and continued forward.

Photographs of this stretch of the road were offered in evidence and were before the jury. At the fatal point the road was approximately 14 feet in width and there was a ditch on either side of about 18 inches. When the defendant's car reached the knob, it skidded; the front end was thrown around and landed with considerable force in the ditch and against a stump. As a result of the accident, the deceased's head was thrown violently against the windshield causing her death.

We must first determine whether, under the above statement of facts, which were the most favorable adduced for the plaintiff, there was sufficient evidence, under the scintilla rule, for the trial judge to submit the case to the jury on the question of wantonness. To do this, we must have reference to the yardstick definitions of wantonness enunciated by this court and measure the facts in this case by that standard.

In Harper v. Griffin Lumber Co., 250 Ala. 339, 342, 34 So.2d 148, 150, we said:

"The duty owed to a guest under section 95, Title 36, Code of 1940, is not to willfully or wantonly injure or kill him. The same measure of duty is owed to a trespasser. * * *"

We cannot here be concerned with the harshness of the above rule. If the public policy of this state requires modification and a softening of the rule, remedial action lies in the exclusive province of the legislature. The placing of an invited guest in the same category with a trespasser was a radical departure from the rules of the common law. However, this state, through its representative legislature, adopted the rule and their power to do so has repeatedly been upheld in this and other states. We cannot and will not by judicial interpretation vary this standard.

Let us return to some other phases of the definition of wantonness in our state. The

rule laid down in Duke v. Gaines, 224 Ala. 519, 520, 140 So. 600, 601, was:

"* * * 'Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.' * * *."

In Mobile Electric Co. v. Fritz, 200 Ala. 692, 693, 77 So. 235, 236:

"When an act is done or omitted under circumstances and conditions known to the person that his conduct is likely to or probably will result in injury, and through reckless indifference to consequences, or consciously and intentionally one does a wrongful act, or omits an act which he ought to have done, the injury inflicted may be said to be wanton. * * *"

The rule was thus stated in First Nat. Bank of Dothan v. Sanders, 227 Ala. 313, 315, 149 So. 848, and in Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505:

"'Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. * * *'" [227 Ala. 313, 149 So. 849.]

■ An approved definition of wantonness is the conscious failure of one charged with the duty to exercise due care and diligence, to prevent an injury after discovery of peril. Or, under circumstances where one is charged with the knowledge of such peril, and conscious that injury will likely, probably or inevitably result from his actions, or his failure to act, he does not take the proper precautions to prevent injury.

■ To constitute "willful or intentional injury", there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission. To constitute "wantonness" the design may be absent if the act is done with knowledge of its probable consequence and with a reckless disregard of those consequences. As was said in Allison Coal & Transfer Co. v. Davis, 221 Ala. 334, 336, 129 So. 9, 10:

"'As regards element of knowledge of peril on part of person charged with wrong, there is no distinction in principle between subsequent negligence and willful or intentional wrong.'"

Again in First Nat. Bank of Dothan v. Sanders, 227 Ala. 313, 315, 149 So. 848, 849:

"To constitute wantonness, it was not essential that * * * the driver of the car, should have entertained a specific design or intention to injure the plaintiff * * *."

Further in Atlantic Coast Line R. Co. v. Brackin, 248 Ala. 459, 461, 28 So.2d 193, 194, we said:

"A willful or intentional act is not involved in wantonness, which may consist of an inadvertent failure to act by a person with knowledge that someone is probably in peril and the act or failure to act is in reckless disregard of the consequences. * * *"

As to the value of circumstantial evidence, the inferences that may be drawn therefrom, in weighing wantonness, we have said in Birmingham Electric Co. v. Mann, 226 Ala. 379, 381, 147 So. 165, 166:

"* * * It may be made to appear, like any other fact, by showing circumstances from which the fact of actual knowledge is a legitimate inference. * * *"

■ Admittedly, the present factual situation, when weighed by the above standards, strikes a rather delicate balance. But, it is not the province of this court to substitute its judgment for the judgment of

the trier of the facts unless his findings are palpably wrong or an improper standard has been applied.

"The trial court should indulge all reasonable presumptions in favor of the verdict of the jury, and unless on full consideration he is convinced by the great weight of the evidence that the verdict is wrong, it should not be disturbed.

"The jury is the law constituted tribunal for the trial of controverted issues of fact. It is not the province of the trial judge to assume the functions of the jury, and set aside its verdict merely because he thinks the verdict should have been different." W. M. Templeton & Son v. David, 233 Ala. 616, 618, 173 So. 231, 232.

As the rule was restated in Mobile City Lines v. Alexander, 249 Ala. 107, 112, 30 So.2d 4, 7:

" '* * * The verdict of a jury and the judgment of a trial court are solemn things; and they should not be overturned by an appellate court, unless a good, legal reason therefor is shown.' * * *"

Our rule was further emphasized in Gulf, M. & O. R. Co. v. Sims, 260 Ala. 258, 264, 265, 69 So.2d 449, 454, as follows:

"* * * the correctness of the verdict is strengthened when the presiding judge refuses to grant a new trial, and the verdict should not be set aside [by this court] because it may not correspond with the opinion of the court as to the weight of the testimony or because it is against the mere preponderance of the evidence."

From the previously cited authorities, it was reasonably inferable that this inexperienced driver was conscious that her attempt to negotiate this dangerous stretch of road might very likely result in injury. Being conscious of this likelihood of injury, she elected to proceed on her hazardous course after two warnings. This course of conduct resulted in the death of the plaintiff's intestate. We are therefore not prepared to say that the learned trial judge committed fatal error in submitting the issue of wantonness to the jury over defendant's request for the affirmative charge. We find that the quantum of evidence exceeded that minimum which this court is allowed to review on appeal.

We are similarly of the opinion that the court below did not err in denying the appellant's motion for a new trial based on his failure to withdraw the cause from the jury.

The judgment is, therefore, due to be, and is hereby, affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.

### On Rehearing

MAYFIELD, Justice.

In appellant's application for rehearing, it is strongly urged that the foregoing opinion overrules National Biscuit Co. v. Wilson, 256 Ala. 241, 54 So.2d 492, on which opinion the appellant has specifically relied.

We are not in agreement with appellant's contention. In the National Biscuit Company case, we held that if the skidding of an automobile was superinduced or accelerated by the driver of the automobile and a resultant injury occurs, the question of negligence is for the jury's determination. That is not to say, however, that under different circumstances the question of wantonness might not also be for the determination of the jury.

In the present case, the motorist was conscious of the perilous condition of the roadway and her own inability to proceed safely under the prevailing conditions. Nevertheless, after warning, and with a conscious knowledge that injury would likely result if she attempted to traverse the dangerous strip of roadway, she elected to proceed. The appellant's course of con-

duct under these circumstances resulted in the death of the appellee's intestate. We hold that, under these conditions, the question of wantonness was one for the jury. We do not consider this decision to be in conflict with our prior holding in National Biscuit Co. v. Wilson, supra.

Opinion extended and application for rehearing overruled.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.