**Shirley BICKFORD, as Administratrix of the Estate of Cuba Irene Fain Sisco, Deceased, Plaintiff-Appellant,**

v.

**INTERNATIONAL SPEEDWAY CORPORATION, Individually and d/b/a Alabama International Motor Speedway, Defendant-Appellee.**

No. 80–7124.

United States Court of Appeals, Fifth Circuit. Unit B

Aug. 31, 1981.

Hogan, Smith & Alspaugh, P. C., Stephen Shay Samples, Birmingham, Ala., Roberts & McNutt, Larry L. Roberts, Nashville, Tenn., for plaintiff-appellant.

Balch, Bingham, Baker, Hawthorne, Williams & Ward, C. William Gladden, Jr., James H. Miller, III, Birmingham, Ala., for defendant-appellee.

Before MILLER[*], Judge, and FRANK M. JOHNSON, Jr. and THOMAS A. CLARK, Circuit Judges.

FRANK M. JOHNSON, Jr., Circuit Judge:

As administratrix of the estate of Cuba Irene Sisco, Shirley Bickford brought this wrongful death action against International Speedway Corporation [Speedway]. Jurisdiction was invoked under 28 U.S.C.A. § 1332 on the basis of diversity of citizenship and amount in controversy. After a trial before a jury the district court directed a verdict in favor of defendant and entered judgment accordingly. Bickford appeals. We reverse.

On August 7, 1977, Cuba Irene Sisco, a 67-year-old resident of Tennessee, went to the Alabama International Motor Speedway, which is owned by defendant Speedway, to watch her son David Sisco perform in the Talladega 500, a stock car race sanctioned by NASCAR. David, a NASCAR-certified stock car driver, had paid a fee to enter the race and in exchange had received several courtesy passes. Although these passes were distributed to the drivers by NASCAR, Speedway had prepared the passes and the only name printed on the passes

was that of the Alabama International Motor Speedway. After signing a release, Cuba Irene Sisco used one of these passes to gain free admission into the paddock area, a fenced area located within the infield of the racetrack and adjacent to the pit area. The paddock fence, which has only one gate for entry and exit, encloses a graveled area approximately 1000 feet long and 300 feet wide. Within this area is a 140-yard by 50-foot paved roadway which provides access to parking. On the day in question there were no speed limit signs posted within the paddock area, no lines denoting passenger lanes or pedestrian crosswalks, and no other controls over the pedestrian or vehicular traffic. All persons within the paddock area were supposedly required by Speedway guards to have passes to gain entry to the paddock. At race time approximately 800 persons and 350 vehicles were within the paddock.

Soon after the race began David Sisco made an unscheduled pit stop. Ms. Sisco walked to the pit area to find out what was wrong. After a few minutes Ms. Sisco, accompanied by two other women, started walking back to the place where she had been watching the race. As the three women were about to cross the paved roadway, Sisco was struck by a pickup truck, was thrown over its top, and landed in the middle of the pavement. Sisco died of her injuries. The two other women were knocked backwards but sustained no serious injury.

Seventeen-year-old Hoyt Mullins, Jr., was driving the pickup truck, and his friend Phillip East was sitting on the passenger side. Both had been drinking beer that morning after having had little sleep the night before. Shortly after the race began the two boys decided to leave the area where they were parked and look for some of their friends. Mullins testified that the paddock gate was unattended and he did not realize he had entered a different area when he drove into the paddock. Mullins did not have a paddock pass to gain entry into that area, a fact about which Mullins

---

[*] Judge of the United States Court of Customs and Patent Appeals, sitting by designation.

was not allowed to testify. When the accident occurred, Mullins was talking to East, and he was unaware that he had hit anyone until he had driven yards past the point of impact. Various witnesses estimated that at the time Sisco was hit the pickup truck was traveling between 30 and 60 miles per hour.

Mullins was subsequently arrested and, approximately one hour after the accident, given a photoelectric intoximeter test. His blood alcohol level registered 0.08; a level of 0.10 constitutes legal intoxication in Alabama. Because Bickford presented evidence that alcohol dissipates at the average hourly rate of .02, the jury could infer that Mullins was legally intoxicated at the time of the accident. No criminal charges were brought against Mullins, however, and Mullins' liability is not an issue in this appeal.

The evidence reflected that Speedway allowed alcoholic beverages to be consumed at Alabama International Motor Speedway. While 216 law enforcement personnel were hired by Speedway to maintain order,[1] patrons were to be arrested for drunkenness only if they became disorderly or unruly. It appears from the record that none of Speedway's agents or employees observed Mullins' operation of his pickup truck prior to the accident.

Appellant Bickford offered the testimony of several witnesses in support of her contention that Speedway negligently or wantonly failed to adequately control Mullins and the crowd on the day of the accident. At the close of plaintiff's case, the district court directed a verdict in Speedway's favor thereby not allowing the case to go to the jury. The district court found that since Sisco did not pay consideration to gain admittance to the race she was, as a matter of law a licensee and not a business invitee of Speedway. Reasoning that Speedway only owed a licensee the duty of not causing willful or wanton injury and there was no evidence of such conduct by Speedway, the district court held that the evidence was insufficient to present a jury question as to whether Speedway breached any duty

which it may have owed to the deceased. The court further held that plaintiff Bickford had failed to establish a causal connection between the alleged acts of negligence and Sisco's death. On appeal Bickford argues that the district court erred by not allowing her case to go to the jury. Specifically, she urges that the jury should have decided whether Sisco was a licensee or an invitee, whether the acts or omissions of Speedway proximately caused Sisco's death, and whether the actions of Speedway constituted willful or wanton conduct. Additionally, Bickford challenges two evidentiary rulings of the district court. We agree with Bickford's contentions and accordingly reverse.

■ In reviewing the action of the district court in granting the motion for a directed verdict, we start with the proposition that the evidence will be viewed as a whole and in a light most favorable to the party opposing the motion. *E. g., Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). A directed verdict is appropriate only if there is a complete absence of probative facts to support a particular inference or if the facts and inferences point so strongly and overwhelmingly in one party's favor that reasonable persons could only arrive at one verdict. *Id.*. But reversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court. *E.g., Riley v. Commissioner*, 311 U.S. 55, 59, 61 S.Ct. 95, 97, 85 L.Ed. 36 (1940).

■ We first examine Bickford's contention that the issue whether Sisco was a licensee or an invitee is a factual issue about which reasonable persons could differ and thus should have been submitted to the jury. *See, e. g., Winn-Dixie Montgomery, Inc. v. Rowell*, 52 Ala.App. 1, 288 So.2d 785, 789 (1973) ("The question of whether a person is or is not an invitee is factual and in a jury trial devolves upon the jury for determination."). This initial factual determination is of significant consequence, for in

---

1. The estimated spectator attendance at the race was 75,000.

Alabama, as under the common law, a landowner's liability to persons injured on his or her land is generally dependent on the status of the injured person in relation to the land. A person who is on another's property with the consent of the owner or occupant or as a guest, but with no business purpose, attains the status of a licensee; a licensee is owed only the duty not to be willfully or wantonly injured, and not to be negligently injured after the owner or occupant has discovered the licensee in peril. *E. g., Hickey v. Charlton*, 335 So.2d 389, 391 (Ala. 1976). On the other hand, a person who enters the premises of another for purposes connected with the business of the owner or occupant of the premises is an invitee, *Winn-Dixie Montgomery, Inc. v. Rowell, supra*, 52 Ala.App. at 4, 288 So.2d at 788; a landowner or occupant owes an invitee the duty to maintain the premises "reasonably free from danger, or, as otherwise expressed, to use reasonable care to keep the premises in a safe condition for persons who come there by invitation." *Autry v. Roebuck Park Baptist Church*, 285 Ala. 76, 80, 229 So.2d 469, 472 (1969). Thus, if Sisco was an invitee, Speedway owed her the duty to use reasonable care. But if she was a licensee, Speedway owed her only the duty not to inflict willful or wanton injury, or the duty not to negligently injure her after she was discovered in peril.

In support of her assertion that Sisco was an invitee, Bickford presented evidence that Sisco entered the premises at the invitation of the Speedway, through NASCAR, for the purpose of watching the race, in other words, for the purpose of engaging in the business activity of Speedway. Additionally, Bickford sought to introduce evidence that Sisco purchased a program from concessionaires at Speedway. Based on the evidence presented and the reasonable inferences to be drawn therefrom, reasonable persons could conclude that Sisco went to Speedway's premises for purposes connected with Speedway's business for the mutual benefit of Speedway and Sisco and thus was an invitee of Speedway. Hence, the district court erred by not submitting the issue to the jury.

We next turn to Bickford's argument that the issue of proximate causation should have been submitted to the jury. Under Alabama law, negligence is the proximate cause of an injury if the injury is "a natural and probable consequence of the negligent act or omission which an ordinarily prudent person ought reasonably to foresee would result in injury." *Vines v. Plantation Motor Lodge*, 336 So.2d 1338 (Ala. 1976). Bickford claimed that Sisco's death was proximately caused by the actions of defendant Speedway in one or more of the following respects: (1) by allowing the vehicle that struck Sisco to be operated in a restricted area without authorization; (2) by allowing the operation of the vehicle by a driver rendered incompetent by reason of fatigue or intoxication; (3) by allowing the vehicle to be operated in the restricted area in a dangerous and unsafe manner; (4) by failing to establish and enforce procedures regulating traffic control and speed limits; and (5) by failing to provide a reasonably safe place for spectators in the paddock area. Bickford presented evidence in support of these claims. Although proximate cause is generally a question for the jury, *e. g., Lawson v. General Telephone Co. of Alabama*, 289 Ala. 283, 267 So.2d 132 (1972), the district court found that there was no evidence that the failure of Speedway to post signs, to disallow or discourage the consumption of alcohol, or to control the traffic caused the accident; thus, the district court ruled that, as a matter of law, a causal connection between Speedway's alleged acts of negligence and Sisco's death had not been established. The district court compared the instant case to the situation in which a customer in a grocery store knocks a banana on the floor and, before the owner of the store knows or should know of the condition, another customer slips and falls. In this classic hornbook situation, the law does not hold the storekeeper liable. *See, e. g., Goddard v. Boston & M. R. Co.*, 179 Mass. 52, 60 N.E. 486 (1901). But if Bickford's evidence is credited, the instant case is readily distinguishable. Viewing the evidence in the light most

favorable to Bickford, reasonable persons could conclude that the events preceding and directly causing Sisco's death could have been reasonably anticipated as a natural and probable consequence of Speedway's actions. Thus, the district court should have submitted the issue to the jury.

In her final contention regarding submission of factual issues to the jury, Bickford argues that the district court erred by concluding that, as a matter of law, Bickford failed to prove willful or wanton conduct on the part of Speedway. Of course, this finding is critically relevant if Sisco was a licensee, which, as we determined above, was a question for the jury. Since the jury on remand may determine that Sisco was only a licensee, we deem it necessary to address the district court's determination.

■ As we explained earlier, if Sisco is determined to be a licensee she was owed the duty not to be negligently injured after Speedway discovered her in peril and the duty not to be willfully or wantonly injured by Speedway. In Alabama, "[w]hen an act is done or omitted under circumstances and conditions known to the person that his conduct is likely to or probably will result in injury, and through reckless indifference to consequences, or consciously and intentionally one does a wrongful act, or omits an act which he ought to have done, the injury inflicted may be said to be wanton." *Mobile Electric Co. v. Fritz*, 200 Ala. 692, 693, 77 So. 235, 236 (1917); *see, e. g., Schuler v. Nelson Weaver Companies*, 270 Ala. 727, 121 So.2d 908 (1960); *Griffin Lumber Co. v. Harper*, 247 Ala. 616, 25 So.2d 505 (1946); *First Nat'l Bank of Dothan v. Sanders*, 227 Ala. 313, 315, 149 So. 848 (1933).

Urging that it did not breach a duty to Sisco, Speedway attempts to support the conclusion of the district court. Speedway first argues that its failure to erect traffic control signs cannot serve as a basis for liability because under Alabama law a landowner has no duty to one on his or her premises to alter or reconstruct the premises to add something that the plaintiff says should be present. But we find no support for this broad proposition in the cases cited by Speedway; instead, each case cited turns on its facts, and the result in each depends on whether under the circumstances the landowner acted reasonably, negligently, or wantonly. *See Green v. Reynolds Metals Co.*, 328 F.2d 372 (5th Cir. 1964); *Terrell v. Warehouse Groceries*, 364 So.2d 675 (Ala. 1978) (negligence standard; floor slippery due to tracked in rain not a basis of liability in the absence of particularly dangerous circumstances); *Schuler v. Nelson Weaver Companies, supra*, 270 Ala. 727, 121 So.2d 908 (wantonness standards; mere maintenance of concrete steps made out of a material commonly used in public buildings not a basis for liability).

■ Citing *Britling Cafeteria, Inc. v. Naylor*, 254 Ala. 84, 47 So.2d 187 (1950), Speedway also argues that because the accident happened quickly and without warning Speedway had no notice or knowledge of Sisco's peril. Thus, speedway reasons, its negligence, if any, cannot be the basis of liability. But we do not understand Bickford to assert that Speedway is liable solely because it negligently failed to aid Sisco after she was discovered in peril. Rather, Bickford argues that Speedway's actions in failing to provide reasonably safe premises constituted willful and wanton behavior. In support of her argument Bickford presented evidence that Mullins, who was in an intoxicated condition, was allowed by Speedway to enter the restricted paddock area without a pass and without authorization, that Mullins was allowed by Speedway to operate the pickup truck at a speed of from 30 to 60 miles per hour in an area congested by pedestrians, and that while being so operated the pickup truck struck and killed Sisco. We believe that under the Alabama definition of wantonness these facts support an inference of wantonness on the part of Speedway. Thus, while the evidence as to wantonness on the part of Speedway may be weak, the question in this instance was for the jury.

■ Finally, Bickford challenges two evidentiary rulings of the district court. First, the district court disallowed testimony that Mullins, the driver of the truck that

struck Sisco, did not have the proper credentials to enter the paddock area. This evidence is relevant, material, and of probative value on the nature and extent of speedway's duty and Bickford's contention that Speedway negligently failed to discharge that duty. Accordingly, the evidence should have been admitted. Fed.R. Evid. 402; *see* Fed.R.Evid. 103. Second, the district court disallowed testimony that Sisco purchased a program from a concessionaire at Speedway. The district court ruled that Bickford was bound by her answers to interrogatories. But Speedway did not propound an interrogatory attempting to elicit information about whether Sisco purchased goods from the concessionaires. The only question resembling an inquiry in this regard was one asking if the decedent paid any consideration for her attendance at the racing event. The failure of Bickford to volunteer the information that Sisco purchased a program in response to the above question cannot be held against her. Because the evidence was relevant, material, and of probative value on the issue of whether Sisco was an invitee, it should have been admitted. Fed.R.Evid. 402.

REVERSED AND REMANDED for proceedings not inconsistent with this opinion.