ELLIS, Judge.
Plaintiff has appealed from a judgment dismissing this suit against the defendant for property damage as the result of an intersectional collision which occurred on September 27, 1954, on black topped highway No. 135 which runs between Clinton and Greensburg, Louisiana. The accident happened at approximately 6:15 A.M. at a point where a gravel road forms a T intersection with black topped Highway 135. Plaintiff’s milk truck was being driven by his son and at the time of the accident the latter’s wife and baby were riding with him. Riding as passengers in the defendant’s pick up truck were Proverb Holmes and Willie Knighton.
After trial the District Judge for reasons which he dictated into the record held the defendant guilty of negligence, and also held the operator of the plaintiff’s truck to be guilty of contributory negligence “in not applying his brakes, not sounding his horn, and not having his truck under control.” On this appeal it is conceded that the defendant was negligent and it is also conceded that if there is liability the property damage has been proven, as prayed for. It is contended; however, that the operator of the plaintiff’s truck in effect had the last clear chance. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195.
*694 As to whether the operator of plaintiff’s truck saw or should have seen the defendant’s truck proceeding into the highway at a distance sufficient for him to have avoided the accident rested entirely upon the facts as shown by the record.
While there is some testimony that there were patches of fog on the morning of the accident the preponderance of the testimony is to the effect that it was relatively clear. The defendant was traveling north on a gravelled road which formed a T intersection with black topped Highway 135, and he intended to enter the highway and turn west toward Clinton which was the same direction in which the plaintiff’s truck was travelling. There was a stop sign on this gravel road at a point close to its intersection with the highway. It is shown that the defendant, as he approached the highway, slowed down and brought his truck to a stop near the edge of the black topped highway before entering. Defendant testified that he looked to the right and saw no traffic approaching from the east, and therefore started slowly into the black topped highway at the same time turning to his left in order to cross into the north lane of said highway and proceed on to C&nton, Louisiana. Just as he got near the center line with the front end of his truck one of his passengers hollered “Holt” am the defendant stated that he j ammed on his brakes and came to an immediate stop. Defendant also contends that the front of his truck did not cross the center line and would, therefore, have the court to believe that the accident occurred in the south or eastbound traffic lane, and that therefore the operator of the plaintiff’s truck was in the wrong lane of travel at the time of the actual collision. However, after a careful consideration of the testimony, while we believe that the accident occurred near the middle line of the highway, we are also convinced that the defendant’s truck had crossed the center line at the moment of the collision and therefore the accident occurred in the north or westbound traffic lane.
Under the settled jurisprudence the operator of the plaintiff’s truck had the right to assume that the defendant would honor his superior right of way and would bring his truck to a stop at the intersection of the gravel road and the black topped highway and would yield the right of way to him. In the case at bar the operator of plaintiff’s truck especially had this right in view of the fact that the defendant slowly approached the highway and came to a stop at the edge of the intersection. McMorris v. Webb, La.App. 1st Cir., 67 So.2d 146; Trahan v. Lantier, La.App., 33 So.2d 136; Harrell v. Goodwin, La.App., 32 So.2d 758; Butler v. O’Neal, La.App., 26 So.2d 753; Robbins v. Mydland, La.App., 81 So.2d 561; Gautreaux v. Southern Farm Bureau Casualty Co., La.App., 83 So.2d 667; Miller v. Abshire, La.App., 68 So.2d 143; Droddy v. Southern Bus Lines, La.App., 26 So.2d 761; Broussard v. Duhon, La.App., 85 So.2d 94.
In view of the fact that the defendant and the operator of plaintiff’s truck had a clear view of the highway 430 feet from the intersection at the moment the defendant stopped at the edge of the black topped highway, it is therefore clear that the operator of the plaintiff’s truck if within the 430 feet radius could and should have seen the defendant at the moment he started to come into the highway proper and make a left turn toward Clinton, Louisiana. In order to determine whether the operator of plaintiff’s truck had the last clear chance to avoid the collision it is, of course, necessary to establish as near as possible from the record exactly where plaintiff’s truck was at the moment the defendant, after stopping at the edge of the highway, again moved forward to come into the highway proper. Although the defendant as well as his guest passengers all testified that they looked to the east or their right before proceeding into the highway and that they could see nothing, meaning, of course, that they did not see the plaintiff’s truck, it is clear that plaintiff’s truck at that time was *695 within the 430 feet viewable distance. One of the passengers testified that when he first saw the truck it was a distance, as stated by the District Judge, “seventy-five, eighty or ninety feet away.” The defendant never did see the plaintiff’s truck prior to the time the front end passed in front of his truck and immediately before the colli-, sion. Mrs. Frazier, a passenger in plaintiff’s truck, testified at one point that she had seen the defendant’s truck coming up to the intersection when she was 300 feet away from it, however on further questioning she changed this statement and reduced the distance to about ISO feet. Clearly, she is no judge of distance, and she frankly admitted that she was not “a very good judge of distance.” She did testify that the approach to this intersection was uphill and she saw the truck coming from the side road, slowing down to about five miles an hour and she thought that it was going to stop but instead, “he came on out on the road, and my husband went off the black top to try to avoid hitting him, and I guess the truck was slanting when he hit us. I don’t think he hit us too hard but when he hit us, we were on a slant and it turned us over about three times.” She estimated the speed of plaintiff’s truck at 30 to 35 miles per hour. A. G. Frazier, Jr., the driver of the plaintiff’s truck, testified that on the morning in question as he approached the intersection of the gravel road and the black topped highway he was driving approximately 35 .or 40 miles per hour, and that when he got near the intersection he saw the defendant slowly approaching the intersection as if he was going to come to a stop, however, the defendant continued slowly into the highway, and the driver of plaintiff’s truck immediately swerved to his right and the front end of his truck passed in front of the defendant’s truck but was struck to the rear of the left wheel by the defendant’s truck. Under cross examination the driver of plaintiff’s truck testified that although he was not very good at judging distances he estimated that he was approximately some 40 feet from the intersection at the time that he saw the defendant and assumed that he was going to stop. He was so close that he stated he did not have time to apply his brakes but only to swerve the truck away from the defendant’s approaching truck.
It is clear from the vast preponderance of the evidence that the driver of plaintiff’s truck proceeding on the main highway did not have any last clear chance to avoid the accident but was in fact confronted with the sudden entry in his immediate path of a vehicle from the side-road which, up until its sudden entry, gave every appearance of intending to yield to plaintiff’s driver his legal right of way.
For instance, at a speed of 35-40 mph (that is, of 51 to. 58 feet per second), even excluding reaction time, his vehicle would take from 108 to 147 feet to stop from the point where his brakes were applied on an average dry level surface if his brakes were of average braking efficiency, according to the Lawyer’s Motor Vehicle Chart (1950) (which assumes a braking efficiency greater than the statutory minimum in Louisiana provided by LSA-R.S. 32:284), and from 54 — 71 feet if his brakes were of excellent braking efficiency under the stopping distance chart set forth at page 413, Volume 9C, Blashfield’s Automobile Law and Practice. The evidence reflects an entry by defendant’s truck when plaintiff was within these distances of the intersection and not taking into consideration the reaction time required by plaintiff to perceive and evaluate the danger and to take appropriate steps, .only in the failure to do which after a reasonable opportunity would plaintiff’s driver have failed in his duty to defendant.
The burden of proof was upon the defendant to establish the fact that the operator of plaintiff’s truck could and should have seen the defendant entering the highway at such a distance that would enable him to avoid the collision, however, in this the defendant has failed. The sole *696 proximate cause of this collision was the negligence of the defendant.
It is therefore ordered that the judgment of the District Court be reversed and that there be judgment in favor of the plaintiff and against the defendant in the full sum of $1,713.06 with legal interest from judicial demand until paid.
It is further ordered that the defendant pay all costs of this suit.