ELLIS, Judge.
Each of the plaintiffs instituted suits against Anthony Spano and his insurer, Fidelity Mutual Insurance Company, for personal injuries to three of the plaintiffs and the wrongful death of Hubert J. Mollo. The wrongful death action was brought by Mollo’s wife, Mrs. Lilline O. Mollo. These causes of action all arose in a collision involving a car driven by Anthony Spano and a car driven by Louise Jackson. The suits were consolidated for trial.
Defendants filed a plea of prescription of one year and the plea was overruled by the trial judge. This question was certified to the Supreme Court by the Court of Appeal and the ruling of the trial judge was upheld. Hebert v. Spano, 233 La. 813, 98 So.2d 199. We hereby adopt this holding herein.
Judgment was rendered against Anthony Spano and Fidelity Mutual Insurance Company, in solido, for $3,000 in favor of plaintiff, Alfred J. Hebert, $2,500 for Wilbert B. Morales, $9,000 for Russell J. Comeaux and $4,000 for Mrs. Lilline O. Mollo. From this unfavorable judgment defendants have appealed.
The following fact situation is revealed by the record presented in this suit. On April 2, 1954, shortly after 4:00 P.M., Anthony Spano was driving south on the Port Allen-Plaquemine Highway on his way home from work at the Solvay Plant. It was a clear day and he was in his new Pontiac driving at approximately 60 miles per hour and several co-workers were commuting with him at this time. The coworkers were Alfred J. Hebert, Wilbert B. Morales, Hubert Mollo and Russell J. Comeaux. Mollo sat in the front seat on the right. In the back seat, Morales was seated on the right. Hebert in the center and Comeaux on the left. Louise Jackson was driving north towards Port Allen at a high rate of speed. The highway was straight and visibility good for at least a mile and a half on either side of the site of the accident.
Spano overtook and passed a car being driven by Joseph Carter at a rate of about 55 miles per hour. After Spano passed Carter the Jackson car went out of control and its two right wheels ran off the road. The front right tire blew out but it is not clear from the record when the blow-out occurred, Spano, driving south in his proper lane at 60 miles an hour, did not put on his brakes prior to the collision. The Jackson car, travelling at a considerable speed, pulled back on the road just before it reached Spano’s car, blocked Spano’s lane, and the collision occurred out of which this suit arose. Hubert J. Mollo and Louise Jackson received fatal injuries and Morales, Comeaux and Hebert *715 received painful injuries in the accident. Spano’s automobile was a total loss.
The crux of the case is the actual distance between the Jackson car and the Spano car when Spano realized or should have realized that a dangerous situation had been created and positive action should be taken on his part to avoid a collision, and whether, at this point, Spano had an opportunity to take such positive action. If he did not have the opportunity, then the sudden emergency doctrine is applicable.
The District Judge was satisfied that Spano had “from three quarters of a mile to three hundred feet” to take some preventive action. However, considering the record in toto, it is apparent that this interpretation is in error. Although there is a possibility that the Jackson car ran off the road three-fourths of a mile before meeting Spano, if so, it was brought back on the highway after this first occurrence, and operated properly on its side of the road until the second time it left the highway.
Spano was the only witness to the first incident and based his testimony on seeing a puff of dust arising by the on-coming car. At this point Spano had not yet overtaken the Carter automobile. Carter did not particularly notice the Jackson car until it left the highway seconds before the accident. The Jackson car was operated properly on its side of the road. The actual chain of events leading up to the collision out of which these proceedings arose began when Spano and Jackson were from 300 to 400 feet apart and the Jackson car again ran off the road.
As stated above, it is not clear when the blow-out on Jackson’s front right tire occurred. This point is not material. Suffice to say that the shoulder of the road was irregular and the Jackson car was travel-ling fast and out of control from a point several hundred feet south of the southbound Spano vehicle to the point of collision. Concluding that Louise Jackson’s car was travelling at a rate of from fifty to sixty miles per hour, which is fair in view of the testimony on this point, and concluding that Spano was approaching at approximately 60 miles per hour, which is also substantiated, it would take the two cars about two to three seconds to meet starting from points from 300 to 400 feet apart, according to the data contained in the Speed Chart, Blashfield’s Cyclopedia of Automobile Law and Practice, Vol. 9C, Section 6237, page 313.
Spano and several of the others present in his car, testified that he said “Look at that damn fool!” when the car went off the highway and out of control. This statement was made moments before the collision. Spano testified further that he checked the right side of the road, preparing to drive from the road in an effort to escape the collision. That is the last thing he remembers.
Defendants stress the fact that Carter was able to bring his car under control and avoid getting involved in the accident. Had the Jackson car continued a slight distance farther up the highway before lurching into the wrong lane, it is quite possible that Carter would have been the hapless victim of the runaway car, instead of Spano.
Spano did look to the right preparatory to driving off the highway to avoid the collision. According to our appreciation of the facts, he had little or no opportunity to do more than this.
From the facts set forth above, it is concluded that Spano was driving down the highway at a reasonable speed, under existing conditions, that he was suddenly faced with an emergency which he had no part in making, and that in the short period which passed from the time the emergency was created until the collision occurred his actions were reasonable under the circumstances. On the basis of these conclusions, the sudden doctrine is found applicable. This doctrine is well recognized in Louisiana jurisprudence. Olivier v. Baldwin, La.App., 48 So.2d 806; Peranio *716 v. Superior Insurance Company, La.App., 76 So.2d 315.
Plaintiff’s counsel urges that Spano was contributorily negligent, citing the cases of Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 86 So.2d 909; Dickson v. Peters, La.App., 87 So.2d 187 and Treadaway v. Marphis, La.App., 73 So.2d 215.
We do not find Spano guilty of negligence, contributory or otherwise, and therefore the cases are inapposite.
For the reasons set forth above, the trial court’s judgment herein is reversed and set aside, and judgment is hereby granted for the defendants, Anthony Spano, and Fidelity Mutual Insurance Company, denying relief to plaintiffs, Alfred J. Hebert, Wilbert B. Morales, Russell J. Comeaux and Mrs. Lilline O. Mollo and all costs to be faxed to plaintiffs.