120 So.2d 309 (1960)
Woodrow Wilson SMITH, Individually, and for the Use and Benefit of his Minor Child, Woodrow Clifton Smith,
v.
NORTHERN INSURANCE COMPANY OF NEW YORK et al.
No. 21314.
Court of Appeal of Louisiana, Orleans.
April 25, 1960.
Rehearing Denied May 23, 1960.
Certiorari Denied June 29, 1960.
*310 Guy J. D'Antonio, Emile C. Toups and Bernard J. Tortomasi, New Orleans, for plaintiff and appellant.
Dufour, St. Paul, Levy & Marx, Leonard B. Levy and William M. Lucas, J., New Orleans, for defendants and appellees.
McBRIDE, Judge.
This case is before us on plaintiff's appeal from a judgment dismissing his suit asserting claims for damages arising out of an automobile accident which occurred at *311 approximately 9 o'clock on the evening of November 22, 1956, on Highway U. S. 80 in the State of Alabama, about one mile east of the City of Demopolis. Plaintiff's minor son, Woodrow Clifton Smith, then 17 years of age, was riding as a nonpaying guest passenger in and occupied the right of the front seat of an automobile driven by his uncle, Horace T. Smith. The boy's sister, Henrietta, also a minor, was riding on the back seat of the car. The accident occurred when a large mule weighing about 1500 pounds came from the right and endeavored to get onto the road and there was a collision between the automobile and the animal. The evidence is convincing that as the car passed, the mule, which had been on the narrow shoulder of the road, came into contact with the right side thereof; it does not appear that the front of the car struck the animal.
As a result of the impact Woodrow Clifton Smith received injuries, and this suit is prosecuted by his father individually and on his own behalf to recover medical expenses already incurred and those to be incurred in the future on account of his son's injuries, and to recover damages for and on behalf of the minor for his personal injuries. The petition alleges that the accident resulted solely from the gross and wanton negligence of Horace T. Smith, particularly in the following respects: (1) driving at a rate of speed in excess of that permitted by the law of Alabama; (2) failure to keep a proper lookout; (3) failure to observe the mule in sufficient time to avoid hitting it; (4) in driving his automobile down a hill at an excessive rate of speed in wanton disregard of human life; (5) operating an automobile in a careless and reckless manner. Impleaded as defendants in solido are Horace T. Smith and his liability insurance carrier.
Defendants deny negligence on the part of Smith and affirmatively allege that the accident was caused solely by circumstances entirely beyond his control. As a special defense defendants plead the "Guest Statute" of Alabama, Title 36, § 95, Alabama Code of 1940. The defendant insurer also specially pleaded all of the terms and conditions of the policy which it had issued Smith and alleged that the limit of its liability thereunder for bodily injury to one person is $10,000. In the alternative, both defendants charge Woodrow Clifton Smith with contributory negligence.
On November 21, 1956, at 6:30 o'clock p. m., Horace T. Smith left New Orleans in his automobile with his aforesaid nephew and niece as passengers therein and drove to Clinton, Alabama, arriving there about 5 o'clock on the morning of November 22, 1956; Smith left Clinton about 9:00 a. m. and drove to Montgomery reaching there about 10:30 a. m., and then returned to Clinton at 3:30 p. m.; he left Clinton at 7:00 p. m. to make the return trip to New Orleans, and after traveling about 70 miles the accident under consideration occurred at 9:00 p. m. The two young guests were asleep in the car and they know nothing as to how the accident may have happened.
Horace T. Smith is a deaf mute and gave his testimony by dactylology with Rev. Julian S. Grehan acting as interpreter. Smith was never asked to state the rate of speed at which he was traveling and there is no expression in his testimony as to that detail. On cross examination he stated that he did not observe the mule until he was 7 feet away from it when it "jumped from the ditch"; that his car was descending the hill at the time; and that he applied his brakes when he was 5 feet away from the mule but could not avoid the accident. He claims he made a visit to the scene the next day and observed the body of the mule lying about 40 or 50 feet below the road. However, while still under cross examination Smith made reiteration of his statement that when he first saw the mule it was 7 feet feet away, but he changed his story as to the location of the mule by stating it "was moving, moving around. * * * In the center of the road."
The most important witness was officer Emmons of the Alabama Highway Patrol, *312 who came to New Orleans to testify at the trial. He investigated the accident after arriving at the scene within a few minutes. He observed the dead mule to the right off the improved portion of the highway; he stated the skid marks left by Smith's car from their beginning to the point of impact measured 71 feet and the length of the skid marks from the point of impact to where the automobile came to rest measured an additional 129 feet. He described the scene as being on a level portion of the highway in a valley between two hills and that the hill which Smith's car had negotiated measured about 300 yards from its crest to base. No evidence appears in the record as to the degree of the grade of the hill.
Officer Emmons made it perfectly clear that the mule could not "jump out of this ditch" which he said was from 18 to 20 feet deep and had a perpendicular drop from the outer edge of the shoulder of the road. He gave the width of the shoulder as four feet and was of the opinion a mule would have had no difficulty in standing thereon.
Emmons also stated, that while not an expert, he has some knowledge of the "sign language" and communicated with Smith by that means during his investigation. According to Emmons a statement was made by Smith that his speed was 50 miles per hour which Emmons says is the maximum permitted by Alabama law. The officer also testified that Smith maintained he did not see the mule until it stepped out into the roadway in front of his car. Emmons stated further that he thought the range of vision of a motorist whose car possessed properly functioning headlights while descending the hill in question would be 300 feet.
Directing attention to the probable speed of his car, we think it evident that Smith was traveling in excess of the legal speed limit of 50 miles per hour while descending the 900 foot hill. First, there is the fact that the skid marks measured 200 feet from beginning to end which goes far to demonstrate that the automobile travelled at high speed. According to the table or chart accompanying the article "Mechanics of Control and Lookout in Automobile Law" by H. B. Barret, a recognized authority, 14 T.L.R. 503, the net braking distance (exclusive of reaction time) required to bring an automobile traveling at 50 miles per hour to a complete stop from the time the brakes are applied is 138.7 feet under average conditions and a net braking distance of 199.8 feet is necessary when the car is traveling at 60 miles per hour. It is not unusual for a court to resort to a speed and stopping distance chart such as is before us in matters of this kind to resolve a question of a motorist's speed. Some cases decided by courts of this state in which such charts have been referred to and cited are: Hebert v. Spano, La.App., 101 So.2d 713; McCandless v. Southern Bell Telephone & Telegraph Co., La.App., 101 So.2d 704; Frazier v. Muse, La.App., 98 So.2d 693; Guillory v. Allstate Insurance Company, La. App., 96 So.2d 866; Yates v. Booty, La. App., 94 So.2d 44; Ingouf v. United States Fidelity & Guaranty Company, La.App., 92 So.2d 794; Crosby v. Brown Oil Tools, Inc., La.App., 92 So.2d 115; Leonard v. Holmes & Barnes, Ltd., La.App., 84 So.2d 109, affirmed 232 La. 229, 94 So.2d 241.
Second, in addition to the damaging import of the chart referred to, there is testimonial evidence in the record leading to a conclusion that Smith was driving at a high rate of speed. Henrietta Smith, who sat on the rear seat, stated that from time to time, once shortly before the accident, she glanced at the speedometer of the car and that it registered between 60 and 70 miles per hour. Such testimony tends to show circumstances from which it may be inferred such speed was continued to the time of the accident. Moreover, Simmons, the highway patrolman, testified that he stopped Smith for speeding at night in the same locale a few months previously and had given him a warning that the speed limit was 50 miles per hour and not the 60 mile per hour rate at which he was traveling.
*313 Another pertinent aspect of the case is whether somnolence could have affected Smith's ability to prudently operate his automobile on the night the accident occurred. His two passengers were asleep and we do not doubt for a moment Smith himself was in need of rest. According to a calculation made from Smith's testimony, the accident occurred about 26½ hours after the journey began at New Orleans and during that period Smith slept for a total of only 4½ hours, inclining us to a strong belief his vision and reflexes were not as acute as they should have been. This is best demonstrated by the fact he did not become aware of the mule on the narrow shoulder until he was 71 feet before reaching it because at that point he applied the brakes, when an ordinarily alert person would have been able to sight the animal much sooner within the 300-foot range of the illumination afforded by properly functioning headlights. That the mule was located on the narrow shoulder of the road all the while cannot be doubted as it could not have suddenly emerged from the 18 to 20 foot ditch as first claimed by Smith.
The question of liability vel non is to be answered by the law of Alabama as the lex loci delicti must govern and determine whether a right of action in tort has been created and if so its extent. 15 C.J.S. Conflict of Laws p. 896. The American Law Institute states the rule: "The law of the place of wrong determines whether a person has sustained a legal injury." Restatement, Conflict of Laws, § 378.
Pursuant to LSA-R.S. 13:3784, plaintiff admitted what are the provisions of the pertinent statute law of Alabama with reference to the responsibility of a motorist in damages resulting from the operating of an automobile to a nonpaying guest riding therein. See also LSA-R.S. 15:424.
The statute in question, namely, Title 36, § 95, Chapter 4, Alabama Code of 1940, provides thus:
"§ 95. Liable only for willful or wanton misconduct.The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."
Counsel on both sides of the case have cited us to numerous decisions of the appellate courts of Alabama which are said to support their respective versions as to the interpretation to be accorded the Alabama Statute. Such decisions were also cited to the trial judge, though not formally offered in evidence. However, counsel tacitly agree that such decisions constitute the body of the pertinent jurisprudence of the courts of Alabama on the subject matter at hand and that a proper interpretation of the statute may be determined therefrom.
We are not unmindful that the Louisiana Supreme Court in Taylor v. Terzia, 171 La. 1040, 132 So. 781, 783, said:
"Counsel for the plaintiff cite two decisions of the Supreme Court of Arkansas, which they contend support plaintiff's position that the action of state bank commissioner in levying the assessment on the defendant was conclusive both as to the necessity for and the amount of the call. These decisions are Davis, Bank Commissioner, v. Moore, 130 Ark. 128, 197 S.W. 295, and Aber v. Maxwell, State Bank Commissioner, 140 Ark. 203, 215 S.W. 389. But these decisions were not offered in evidence in the court below, and we cannot regard them as evidence here. The interpretation as well as the language of the laws of a sister state must be proved as a fact in a case; otherwise, we cannot consider such interpretation. * * *"
*314 We take this language to mean that when a Louisiana court is concerned with the law of another state, in order for a litigant to prove the interpretation placed thereon by the courts of said state, the decisions relied upon must be formally offered in evidence or they will not be considered. Whereas the interpretation as well as the language of the laws of a sister state must be proved as any other fact in the case, we think such may be agreed to by counsel to the same extent as they could agree upon any other fact. Therefore, as the parties before us are in full accord that this court take notice of the decisions cited, all of which were called to the attention of and considered by the trial court, their agreement should be given effect on appeal. A remand of the case for the introduction of the decisions would be but an idle and time-consuming process.
While we have considered all of the decisions submitted, we deem it necessary for the purpose of this opinion to discuss only certain ones which we think fully interpret the statute in question and furnish a basis for determining whether under the facts as above set forth there was willful or wanton misconduct on the part of Smith in connection with the injury sustained by plaintiff's son.
During argument there was read to us what the Supreme Court of Alabama had said in Harper v. Griffin Lumber Co., 250 Ala. 339, 34 So.2d 148, 150:
"The duty owed to a guest under section 95, Title 36, Code of 1940, is *315 not to willfully or wantonly injure or kill him. The same measure of duty is owed to a trespasser. McGhee v. Birmingham News Co., 206 Ala. 487, 90 So. 492; Perry Supply Co. v. Brown, 221 Ala. 290, 128 So. 227."
Upon hearing said quotation, at first hand we gained the impression that only a slight duty was owed by a motorist to a nonpaying guest in the automobile under Alabama's "Guest Statute" and that the "willful or wanton misconduct" contemplated by the statute was to be placed in the highest category of fault.
However, after reading and carefully analyzing the pronouncements of the Alabama courts interpreting the statute, we think "wanton misconduct" as used therein in some respects can be likened to the "gross fault" under Louisiana law, which according to LSA-C.C. art. 3556(13) is fault that proceeds from inexcusable negligence or ignorance.
The facts in the case of English v. Jacobs, 263 Ala. 376, 82 So.2d 542, 544, decided by the Supreme Court of Alabama in 1955, in an action involving the "Guest Statute" were: The defendant had little experience in driving an automobile under adverse conditions and was aware of her ineptitude in this respect. She had never driven on a mud road made slick by rainfall and declining all offers of assistance proceeded to drive the car which skidded in the mud with the result that the front end was thrown around landing in a ditch, the guest being killed. The suit for damages ensued, and after trial judgment was entered for plaintiff and defendant appealed. The question before the court was whether defendant's actions under the guest statute were sufficient to constitute wantonness. The court in a very comprehensive opinion said:
"We must first determine whether, under the above statement of facts, which were the most favorable adduced for the plaintiff, there was sufficient evidence, under the scintilla rule, for the trial judge to submit the case to the jury on the question of wantonness. To do this, we must have reference to the yardstick definitions of wantonness enunciated by this court and measure the facts in this case by that standard.
"In Harper v. Griffin Lumber Co., 250 Ala. 339, 342, 34 So.2d 148, 150, we said:
"`The duty owed to a guest under section 95, Title 36, Code of 1940, is not to willfully or wantonly injure or kill him. The same measure of duty is owed to a trespasser. * * *'
"We cannot here be concerned with the harshness of the above rule. If the public policy of this state requires modification and a softening of the rule, remedial action lies in the exclusive province of the legislature. The placing of an invited guest in the same category with a trespasser was a radical departure from the rules of the commonlaw. However, this state, through its representative legislature, adopted the rule and their power to do so has repeatedly been upheld in this and other states. We cannot and will not by judicial interpretation vary this standard.
"Let us return to some other phases of the definition of wantonness in our state. The rule laid down in Duke v. Gaines, 224 Ala. 519, 520, 140 So. 600, 601, was:
"`* * * "Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury. "* * *.'
"In Mobile Electric Co. v. Fritz, 200 Ala. 692, 693, 77 So. 235, 236:
"`When an act is done or omitted under circumstances and conditions known to the person that his conduct is likely to or probably will result in injury, and through reckless indifference to consequences, or consciously and intentionally one does a wrongful act, or omits an act which he ought to have done, the injury inflicted may be said to be wanton. * * *'
"The rule was thus stated in First Nat. Bank of Dothan v. Sanders, 227 Ala. 313, 315, 149 So. 848, and in Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505:
"`"Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. * * *"' (227 Ala. 313, 149 So. 849.)
"An approved definition of wantonness is the conscious failure of one charged with the duty to exercise due care and diligence, to prevent an injury after discovery of peril. Or, under circumstances where one is charged with the knowledge of such peril, and conscious that injury will likely, probably or inevitably result from his actions, or his failure to act, he does not take the proper precautions to prevent injury.
"To constitute `willful or intentional injury', there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission. To constitute `wantonness' the design may be absent if the act is done with knowledge of its probable consequence and with a reckless disregard of those consequences. As was said in Allison Coal & Transfer Co. v. Davis, 221 Ala. 334, 336, 129 So. 9, 10:
"`"As regards element of knowledge of peril on part of person charged with wrong, there is no distinction in principle between subsequent negligence and willful or intentional wrong."'
"Again in First Nat. Bank of Dothan v. Sanders, 227 Ala. 313, 315, 149 So. 848, 849:
"`To constitute wantonness, it was not essential that * * * the driver of the car, should have entertained a *316 specific design or intention to injure the plaintiff * * *.'
"Further in Atlantic Coast Line R. Co. v. Brackin, 248 Ala. 459, 461, 28 So.2d 193, 194, we said:
"`A willful or intentional act is not involved in wantonness, which may consist of an inadvertent failure to act by a person with knowledge that someone is probably in peril and the act or failure to act is in reckless disregard of the consequences. * * *'"
In conclusion it was said:
"From the previously cited authorities, it was reasonably inferable that this inexperienced driver was conscious that her attempt to negotiate this dangerous stretch of road might very likely result in injury. Being conscious of this likelihood of injury, she elected to proceed on her hazardous course after two warnings. This course of conduct resulted in the death of the plaintiff's intestate. We are therefore not prepared to say that the learned trial judge committed fatal error in submitting the issue of wantonness to the jury over defendant's request for the affirmative charge. * * *
"The judgment is, therefore, due to be, and is hereby, affirmed."
On rehearing these observations were made by the court:
"In the present case, the motorist was conscious of the perilous condition of the roadway and her own inability to proceed safely under the prevailing conditions. Nevertheless, after warning, and with a conscious knowledge that injury would likely result if she attempted to traverse the dangerous strip of roadway, she elected to proceed. The appellant's course of conduct under these circumstances resulted in the death of the appellee's intestate. We hold that, under these conditions, the question of wantonness was one for the jury. * * *"
In Dean v. Adams, 249 Ala. 319, 30 So.2d 903, 904, the Supreme Court of Alabama was confronted with the question whether the evidence justified a submission to the jury of wantonness as the proximate cause of plaintiff's injuries received as a guest of defendant who was operating his automobile. The car skidded on the road, then turned over, and the guest was injured. The court said:
"We have often defined wantonness as requiring knowledge that plaintiff or some person situated as she was, would be subject to danger of being injured as a probable consequence of his conduct, and that with reckless disregard of such consequences he pursued that conduct which proximately caused the injuries complained of. Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 580, 141 A.L.R. 697; Rainey v. State, 245 Ala. 458, 17 So.2d 687; Simon v. Goodman, 244 Ala. 422, 13 So.2d 679; Jack Cole v. Walker, 240 Ala. 683, 200 So. 768; Daniel v. Motes, 228 Ala. 454, 153 So. 727; Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505; Claude Jones & Son v. Lair, 245 Ala. 441, 445, 17 So.2d 577.
"We have here a situation whose details were known to defendant. (1) That he had on the rear wheel a tire with smooth tread; (2) his steering was loose; (3) that it was night and he had driven about eight or nine hours that night; (4) that it was raining and the road was slippery; (5) that he was driving some 60 miles an hour; (6) that plaintiff was on the rear seat of the car asleep, as were all the others in the car except defendant and his wife.
"* * * The jury could find that defendant consciously and intentionally drove his car on that occasion at such a rate of speed as that in the condition it was in he knew it was dangerous to its occupants, and all with reckless disregard of such danger. We think this *317 record manifests a typical case of wanton injury."
It is interesting to examine the facts of some of the cases alluded to in Dean v. Adams, supra, in which the definitions of wantonness appear:
In Couch v. Hutcherson the motorist started downhill at considerable speed with heavy load and without brakes knowing there was an obstruction at the base of the hillheld that the question of wantonness was for the jury; Jack Cole, Inc. v. Walkerthe motorist kept no lookout for pedestrians on walkway to which he was fast approaching, although he knew there was a large amount of traffic at that point, and ran down a pedestrianheld that the evidence was sufficient to carry the case to the jury on the wantonness count; Daniel v. Motesevidence that defendant was guilty of wanton conduct when truck which he was driving down center of highway collided with oncoming automobile which plaintiff was driving on his side of highway, held sufficient for jury; in Claude Jones & Son v. Lair judgment in favor of plaintiff was affirmed, the facts being that plaintiff was driving his automobile on a public highway and ran into defendant's truck which had been negligently left parked on said highway at night unattended and without proper lights. It was held that the action was sufficient to raise jury question on issue of defendant truck driver's "wanton or willful injury."
In Zemczonek v. McElroy, 264 Ala. 258, 86 So.2d 824, decided by the Supreme Court of Alabama in 1956, the fact that a motorist was driving at a speed of nearly 60 miles an hour in the darkness in a driving rain, without having had sleep for nearly 24 hours except such as he might have had while one of the other occupants of the car drove, was sufficient to make a jury question under a wanton count.
It has never been shown to us what is meant by negligence as contradistinguished from wantonness under Alabama law, and the only case to which we are cited which could support defendant's contention that there was a lack of wantonness is Smith v. Roland, 243 Ala. 400, 10 So.2d 367, decided in 1942. There, in an action for the death of a guest or invitee in defendant's truck, the evidence was held insufficient to take to the jury the question of defendant's wanton conduct causing collision with another truck. The two vehicles collided on a narrow bridge and the court held that while the defendant was guilty of "gross negligence," such was negligence but not wantonness. The court remarked that the evidence goes to show that while defendant's truck was passing the other truck on the bridge or just after defendant's truck had passed off the bridge, defendant in attempting to pull his truck further to the right caused the bolster to swing around and strike decedent, or that the other truck as it passed defendant's truck came into contact with the bolster and threw it around striking decedent. The court said that this evidence at best shows simple negligence and that it did not warrant an inference of wanton conduct. It is not clear whose fault was responsible for the accident.
In summation, the facts in the case presently before us show (1) that Smith was driving at a rate of speed in excess of the maximum speed permitted by the law of Alabama, (2) that he was in a drowsy or sleepy condition which dulled his senses and inhibited his driving the automobile in a manner such as a prudent operator would, (3) that he failed to keep any lookout for objects or persons on or near the roadway although his headlights illuminated an area of 300 feet before him, this being best demonstrated by the fact that he did not observe the mule on the shoulder of the roadway until he was within 71 feet of it, (4) that he was conscious that injury would likely or probably result to his guests.
We do not think it would be proper to say that the actions of Smith constituted "willful or intentional injury" as that would entail the knowledge of danger accompanied with a design or purpose to inflict injury, which design, of course, is absent. But we *318 think that under the "Guest Statute" of Alabama as interpreted by its appellate courts, Smith must be held guilty of wanton misconduct in the particulars above enumerated. His conduct clearly amounted to a conscious doing of some act or the omission of some duty under knowledge of existing conditions and with a consciousness that from the doing of such act or omission of such duty that injury would likely or probably be visited upon his guest.
We see no material difference between his conduct and that of the inexperienced motorist who drove her guest over the slick road; or the motorist whose car had smooth tires and defective steering and skidded and turned over; or the motorist who started downhill at fast speed without brakes knowing the existence of an obstruction at the bottom of the hill; or the motorist who kept no lookout for pedestrians; or the motorist whose truck traveled on the wrong side of the road and collided with another vehicle; or the motorist who left his vehicle unattended at night on a public highway without lights; or that of the sleepy motorist who drove his car at the rate of 60 miles an hour on a rainy night.
We have no hesitancy in holding the defendants responsible in damages under the facts of the case.
The plea of contributory negligence cannot be considered because under well-settled Alabama jurisprudence contributory negligence is no defense to a wanton count. Zemczonek v. McElroy, supra; Shirley v. Shirley, 261 Ala. 100, 73 So.2d 77.
The impact of the collision threw Woodrow Clifton Smith forward causing his head to strike the dashboard inflicting injuries which we are convinced are very serious and will be permanent.
In addition to lacerations on the head, the boy sustained a fracture and dislocation of the cervical spine involving C-4 and C-5. He was immediately taken to a hospital in Demopolis, Alabama, where he stayed in traction with 30-pound weights for a period of three days; then when taken home to New Orleans he was sent to Baptist Hospital where he remained for a period of three weeks in traction; it was necessary for the physicians to insert a Crutchfield tong, which is a method of applying a large amount of traction to the skull. It was explained by one of the medical experts that a hole is drilled through the outer table of the skull at right angles and a tong similar to an ice tong is inserted and then traction is applied to the tong with 30-pound weights. The purpose of the traction was to reduce the cervical dislocation. In addition to the traction at the hospital in Demopolis and at Baptist Hospital, the patient also received a two-week course of traction at Charity Hospital.
After being discharged from the Baptist Hospital, young Smith wore a brace for a period of eight months both night and day to hold his neck in place. This cervical appliance, used on an ambulatory patient, fits around the neck and head holding the head immobile.
Young Smith experiences considerable anxiety because he has been admonished by the physicians that any sudden jolt may sever his spinal cord which would either produce paralysis from the neck down or kill him, and he is prevented from leading the normal life of a person of his age and cannot participate in any kind of sports entailing physical competition.
The physicians recommend that the boy undergo an operation called a cervical spine fusion in order to reduce rigidity of the neck and minimize future injury, but it appears that such operation will not necessarily prevent the occurrence of future injury. The cost of the recommended operation will be $850.
There is no question that young Smith's condition is serious; that the injury is permanent; and that he has suffered extreme physical pain and mental anguish and will continue to do so for the balance of his life.
*319 In the lower court some attempt was made to show that the boy's present condition could have resulted from poliomyelitis which he suffered some years ago, but the great weight of the medical testimony convinces us that there is no causal connection between his present condition and his attack of poliomyelitis.
It was proven by plaintiff that he has expended the sum of $958 up to the present time for physicians' and hospital fees, surgical appliances and other medical expenses as a result of the injuries sustained by his son.
In actions for tort the measure and elements of damage pertain to the substance of the right and not to the remedy so that such matters are generally regarded as being regulated by the law of the place in which the tort was committedthe lex loci delicti. 15 C.J.S. Conflict of Laws p. 956. On the question of quantum we have been cited to several cases decided by the courts of Alabama, viz., Birmingham Electric Co. v. McQueen, 253 Ala. 395, 44 So.2d 598; Waters v. Anthony, 252 Ala. 244, 40 So.2d 316; Hudson v. Stripling, 261 Ala. 196, 73 So.2d 514; Clark v. Hudson, 265 Ala. 630, 93 So.2d 138; Atlantic Coast Line Railroad Co. v. Barnes, 261 Ala. 496, 75 So.2d 91.
We have read these cases and have analyzed the type of injury involved in each and our conclusion is that an award of $15,000 to Woodrow Clifton Smith for his injuries and the cost of the operation he must undergo would be adequate and do substantial justice in this matter. Plaintiff in his own behalf is entitled to recovery of the $958 expenses incurred in connection with the boy's injuries.
The policy of liability insurance issued by defendant insurer to Horace T. Smith was filed in evidence, and according to its terms the limit of liability of the insurer as restricted by the policy is the sum of $10,000, and, therefore, that sum must be prorated between Woodrow Clifton Smith and Woodrow Wilson Smith. The proper formula to be used in making such proration is Woodrow Wilson Smith, individually, is to receive 958/15958 of $10,000 or $600.33; Woodrow Clifton Smith's proration would be 15000/15958 or $9,399.67. Both amounts aggregate the $10,000 liability of the insurer. Plaintiff and his son are entitled to a judgment against Horace T. Smith for the overplus.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of Woodrow Wilson Smith, individually, and against the defendants jointly and in solido for the full sum of $958 (the liability of Northern Insurance Company of New York to be not more than $600.33) and that plaintiff have judgment for the use and benefit of his minor child, Woodrow Clifton Smith, against the defendants jointly and in solido, for the sum of $15,000 (the liability of Northern Insurance Company of New York to be not more than $9,399.67), said amounts to bear legal interest from judicial demand until paid.
Defendants are cast for the costs in both courts.
Reversed.

On Motion for Rehearing
Rehearing denied.
JANVIER, Judge (dissenting).
I have grave doubt on the question of what constitutes wilful negligence and of what constitutes wanton negligence under the jurisprudence of Alabama which interprets those words as they appear in the guest-passenger statute of Alabama, section 95, Title 36, Code of 1940. If wilful and wanton are used synonymously, and, under Alabama jurisprudence, mean the same thing, then I feel that there is no liability here, since I think that there was no wilful intent to injure. If wilful and wanton are used to designate two different grades *320 of negligence, obviously wanton negligence would not be so great as wilful negligence, since wanton negligence would indicate a mere attitude of not caring whether injury resulted, whereas wilful negligence would constitute an intent to injure. If those words then mean to indicate different grades of negligence and the statute makes the negligent party liable if there is mere wanton negligence, then there would be liability since here, although the negligence was not wilful, it was wanton in that the action of the driver of the car indicated an attitude of not caring whether injury resulted.
Entertaining these views and feeling that we are not certain as to whether under Alabama jurisprudence the facts here would justify recovery, I respectfully dissent from the refusal to grant the rehearing.