149 So.2d 182 (1963)
Marshall LANDRUM, Plaintiff-Appellant,
v.
NEW AMSTERDAM CASUALTY COMPANY et al., Defendants-Appellees.
No. 758.
Court of Appeal of Louisiana, Third Circuit.
January 28, 1963.
*183 Polk, Foote & Neblett, by Robert B. Neblett, Jr., and George M. Foote, Alexandria, for plaintiff-appellant-appellee.
George J. Ginsberg and John M. Sherrill, III, Alexandria, for defendants-appellees-appellants.
Carl F. Walker, Monroe, for defendants-appellees.
Before TATE, FRUGÉ and SAVOY, JJ.
SAVOY, Judge.
This is an action for personal injuries sustained by plaintiff's minor daughter, Sally Landrum, and for medical expenses incurred by him on behalf of the minor, resulting from a collision between a 1960 model Dodge stationwagon, owned by plaintiff and being driven by his wife, Mrs. Irble Landrum, and an Oldsmobile automobile owned and being driven by defendant, Anthony DeBona. Plaintiff alleges that both drivers were guilty of concurring negligence and named as defendants, Anthony DeBona and his insurer, New Amsterdam Casualty Company, and the insurer of the plaintiff's stationwagon, Grain Dealers Mutual Insurance Company.
After disposition of certain exceptions and trial on the merits, judgment was rendered in favor of plaintiff, individually, in the amount of $2,456.20, and for the use and benefit of his minor daughter, Sally *184 Landrum, in the amount of $8,000.00; and against defendants, Anthony DeBona and New Amsterdam Casualty Company, in solido. The judgment against New Amsterdam Casualty Company was limited to the amount of its policy of $10,000.00. Plaintiff's demands against Grain Dealers Mutual Insurance Company were rejected.
Plaintiff appealed and defendants, Anthony DeBona and New Amsterdam Casualty Company, also appealed. Plaintiff then filed an answer to the appeal, asking for an increase in the awards made by the district court.
The issues before us on appeal involve whether the driver of each vehicle was negligent; whether such negligence, if any, was the proximate cause of the accident; and, the quantum awarded.
Certain basic facts are not in dispute. The collision occurred approximately 11:15 A.M. on July 14, 1960, at the intersection of Madison and Sixth Streets in Alexandria, Louisiana. The two (2) streets are paved and intersect at a 90-degree angle. Madison Street is a one way street, with two (2) north-bound lanes, plus an additional lane for parking on the east side. Sixth Street is a two way street. There are stop signs which favor Madison Street as the through street. Also, a blinking traffic light is suspended over the intersection, indicating red for traffic along Sixth Street and yellow for traffic along Madison Street. Buildings are located near all four (4) corners.
Sally Landrum was seated in the right front seat of the stationwagon which was being driven by her mother, Mrs. Irble Landrum, in a northerly direction along Madison Street in the left or west lane of traffic. Anthony DeBona was alone as he drove his Oldsmobile in an easterly direction along Sixth Street and approached the intersection.
The two (2) vehicles collided within the intersection, with the major damage to the vehicles being the left front portion of the Landrum stationwagon and the right front side of the DeBona automobile, at the right front wheel. After the initial impact, the vehicles slammed together and then skidded to rest with the stationwagon stopping near the northwest corner of the intersection, and the DeBona automobile stopping north of the intersection against a building on the east side of Madison Street, with three (3) wheels on the sidewalk.
With respect to liability, the defendants, Anthony DeBona and New Amsterdam Casualty Company, maintain that the trial court was in error in holding that Anthony DeBona was guilty of negligence which was the proximate cause of the accident.
This contention is based upon his testimony that he stopped for the stop sign; looked carefully for traffic; and then proceeded into the intersection, where his car stalled as it had cleared, or almost cleared, the west half of Madison Street. He testified that he stayed in this position, trying to start his car for a period of about two (2) minutes, before he was struck by the stationwagon.
On the other hand, Mrs. Landrum testified that she was driving in the left lane along Madison Street at twenty (20) to twenty-five (25) miles per hour, and that when she approached the intersection, the DeBona automobile suddenly darted out in front of her, traveling at a fast rate of speed.
Her testimony is corroborated by the testimony of the police officers and the photographs. The debris in the street and skid marks indicated that the point of impact was near the center of the intersection. The skid marks or tire marks showed that after the impact, the DeBona vehicle swerved to its left and skidded approximately fifty (50) feet before it stopped, and the stationwagon skidded to the right for a distance of approximately twenty (20) feet.
*185 After a careful examination of the record, we agree with the trial court that the version of the accident given by Anthony DeBona is not substantiated by the facts of the case. The evidence is overwhelming that the point of impact was near the center of the intersection, and the DeBona automobile was moving at the moment of impact. We agree with the finding of the trial court that Anthony DeBona drove his automobile into the intersection in a negligent manner, against both a stop sign and a blinking red semaphore signal, into the path of the oncoming Landrum stationwagon. We also find that the facts do not show that Anthony DeBona had pre-empted the intersection.
In connection with the issue as to whether Mrs. Landrum was guilty of negligence, plaintiff urges that she violated two (2) city ordinances, one which fixes the speed limit at twenty-five (25) miles per hour, and another which requires drivers approaching a caution or blinker light at an intersection to slow down and bring their vehicle under complete control so as to be able to come to an immediate stop. However, an examination of the record reveals that plaintiff did not plead the violation of these municipal ordinances, either in his original or supplemental petition, and, therefore, any such violation as contended cannot be considered as an issue before this Court. Nor do we find that the introduction of any evidence had the effect of enlarging the pleadings since all of the evidence introduced was related to the issues raised by the pleadings.
In view of this holding, it will not be necessary for us to rule on whether or not these ordinances were tendered in proper form to be filed with the Clerk of this Court under the provisions of LSA-R.S. 13:3712.
Plaintiff, as well as the defendants, Anthony DeBona and New Amsterdam Casualty Company, maintain that the trial court was in error in not finding Mrs. Irble Landrum guilty of negligence which was a proximate cause of the accident. They urge that she failed to keep a proper lookout; that she did not have her car under proper control; and was driving at an excessive rate of speed; that she did not apply her brakes although she had ample time; and that she did nothing to prevent the accident after she observed, or should have observed, that the other automobile was not going to stop at the stop sign at the intersection.
This case is unusual in that the intersection where the accident occurred is controlled not only by the stop signs, but also by a blinking semaphore signal.
Since none of the Louisiana cases cited in the briefs involved an intersection which is controlled by both stop signs and a blinking semaphore traffic light, we must first determine the respective duties of the drivers approaching such an intersection.
The driver on the inferior street must, of course, stop for the stop sign and yield right-of-way to the traffic approaching the intersection on the favored street. In view of the stop signs, the motorist on the right-of-way street, with knowledge of such stop signs, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his vehicle to a stop before entering the intersection, and such motorists can indulge in this assumption until he sees, or should see, that the other car has not observed or is not going to observe the law.
We believe, however, that the blinking yellow light at the intersection added an additional duty on the driver approaching on the right-of-way street and that duty is to approach the intersection with caution commensurate to the situation. Such a blinking traffic light would indicate to any reasonable person that the intersection is more dangerous than other intersections where such a light does not exist. Although the additional duty to be cautious may vary according to the individual *186 circumstances, in the case before us on appeal, Mrs. Landrum had the duty of proceeding into the intersection with caution, at a reasonable rate of speed and also had the duty of looking carefully for the approach of vehicles along the inferior street.
Although there was a conflict in the testimony, particularly as to the length of skid marks of the Landrum stationwagon prior to impact, we find that the record substantiates the district court's finding that Mrs. Landrum was driving at a speed of twenty (20) to twenty-five (25) miles per hour as she approached the intersection. We do not believe that it was necessary for her to slow her vehicle before entering the intersection, in view of the moderate rate of speed and her knowledge of the location of the stop signs granting her the right-of-way. Since the intersection is a blind one, it is obvious that Mrs. Landrum kept a close lookout and noticed the danger of the approaching vehicle as soon as it was physically possible to do so. We are in accord with the finding of the trial court that Mrs. Landrum was not guilty of any negligence.
Even assuming Mrs. Landrum was negligent in not slowing her vehicle before approaching the intersection, such negligence would not be a proximate cause or cause-in-fact of the accident, as the record leaves little doubt but that the accident would have occurred even had she been driving at a slower rate of speed.
Now turning our attention to the issue of quantum, plaintiff has appealed for an increase in the award, and defendants, Anthony DeBona and New Amsterdam Casualty Company, have appealed for a decrease in the award.
The force of the impact threw Sally Landrum into the windshield of the stationwagon, knocking a hole in it. She was rendered unconscious and did not regain consciousness for approximately five (5) hours. She was taken immediately to the hospital, where Dr. Lee Jarrell performed an operation which lasted approximately three and one-half (3½) hours. Dr. Jarrell, a specialist in general surgery, noted multiple, extensive and severe lacerations of the face. The worst laceration began at the bridge of the nose and extended over the upper eyelid to the temple region. This laceration extended down to the bone and measured approximately eight (8) to ten (10) centimeters in length. He noted visually a compound fracture of the frontal bone, with glass imbedded into the fracture area. There were also five (5) or six (6) lacerations approximately four (4) centimeters in length. One laceration of the upper lip extended through and through into the oral cavity, and measured eight (8) to ten (10) centimeters. Several laceraations of the left cheek measured three (3) or four (4) centimeters. Dr. Jarrell also found her to have a brain concussion, and injury and lacerations to her knee.
Dr. Robert C. Culpepper, a pediatrician of Alexandria, had been treating Sally Landrum regularly since July, 1959, for a convulsive disorder. He assisted after the surgery by giving her drugs and foods intravenously, as she could take no food or drugs orally for forty-eight (48) hours after the operation.
Dr. Ben Fendler, a specialist in eye, ear, nose and throat, assisted Dr. Jarrell in the operating room. He noted the multiple lacerations of the face and also compound fractures of both frontal sinuses. He found numerous abrasions and lacerations of Sally's eyes. He removed foreign particles from her eyes, cleaned them and placed bandages. Later, he prescribed glasses for Sally, which she had not needed in an eye examination in 1955, but he could not say that the visual deficiency and the accident were related. In reference to her sinuses, he stated that such an injury would result in some thickening of the membrane of the sinuses and this would lead to a very good possibility of the development of chronic frontal sinusitis. Dr. Fendler testified that the abrasions to the eyes had healed completely.
*187 Dr. Davidson H. Texada, Jr., specialist in neuro-psychiatry, had treated Sally Landrum prior to the accident relative to her convulsive disorder. Dr. Texada ran an electroencephalogram on Sally and, in comparing it with one taken earlier, he found further abnormality, which he attributed as probably due to the injuries received in the automobile accident; although, he testified that there was no way of being absolutely certain and the number of seizures had not increased since the accident. With reference to the effect of the scars on Sally's social adjustment, Dr. Texada testified as follows, to-wit:
"Well, this child is certainly already a handicapped child. She apparently did suffer some brain damage which we think came from probably a febrile illness before the age of three or four years. She is mentally retarded, she does not have the normal intelligence and, of course, she is epileptic, with always the possibility and the occurrence of seizures. These in themselves, of course, are a tremendous handicap for any child to overcome to make any happy or satisfactory social adjustment later in life, or as an adult. In order for her to be able to do that she has to fall back on other aspects of her personality or of her life. Most commonly the thing that can be the biggest help to a little girl like this would be if she has a pleasing, warm personality to overcome the handicap of her intelligence and of the seizure state of the brain, or, of course, if she had a particularly attractive appearance. Either of these could be a definite help to her. The introduction of facial scars, if these are going to remain with her to the extent that there is an disfigurement, more or less knocks the psychological props out of what she has to depend on in life later, so that this, in my opinion, certainly will increase her handicap, her probability of making a happy, social adjustment."
The record also contains a report by Dr. William H. Hamilton, dermatologist, and Dr. Frederick F. Boyce, internist and general surgeon, both of Alexandria; and Dr. Robert J. Meade, plastic surgeon of New Orleans. Plastic surgery was recommended. Dr. Meade noted twenty (20) different scars and determined that four (4) separate operative procedures would be necessary. He estimated the total cost, including room, laboratory, operating room, anesthesia, medication and surgical fees, to be $2,199.00 if done by local anesthesia, and $2,419.00 if done by general anesthesia.
The record also contains several photographs of Sally Landrum, which are noted by the district court in its reasons for judgment, as clearly reflecting her appearance. The district court commented that the horrible scars were disfiguring to a very nice looking girl, and would strongly interfere with her chances of marriage. The record also shows that Sally was strongly affected by the embarrassment of the scarring; has not wanted to participate in school plays and other activities; refused to take her school picture; wears makeup constantly and likes to wear her glasses to help hide some of the scars. The record convinces us that even with plastic surgery, these scars will be noticeable and disfiguring.
The trial judge granted plaintiff the sum of $8,000.00 for the use and benefit of his minor daughter for the injuries sustained in the accident in the instant case. The plaintiff has answered the appeal taken by the defendants, asking that the awards made by the district judge be increased. Considering the nature of the injuries received by the minor daughter, and particularly the numerous facial scars which are permanent, we think that the award should be increased from the sum of $8,000.00 to the sum of $15,000.00.
Plaintiff maintains that the district court was in error in holding that a plastic surgeon's testimony regarding future *188 hospital and other expenses in connection with recommended surgery was not proven sufficiently for him to make an award for these special items of damages. We are of the opinion that the trial judge was in error in not allowing these items, as our courts have held that an estimate by a competent medical doctor is adequate proof of such future medical expenses. See Jenkins v. American Automobile Insurance Company (La.App., 2 Cir., 1959), 111 So.2d 837; Carhee v. Scott (La.App., 2 Cir., 1958), 104 So.2d 236; Preuett v. State through Department of Highways (La.App., 2 Cir., 1953), 62 So.2d 693, as discussed in 69 A.L.R.2d 1265. The itemized estimate of these costs by Dr. Meade, in addition to his fee of $1,100.00, amounts to $1,099.00, and appears reasonable. Accordingly, the award in favor of plaintiff, individually, will be increased by the sum of $1,099.00.
The liability of the defendant insurer in this case is limited by the terms of the policy to the principal sum of $10,000.00, and the trial judge condemned the insurer, solidarily with the insured, to pay that entire amount to plaintiff, individually, and for the use and benefit of his minor daughter, in the sum of $2,000.00 and $8,000.00, respectively. Defendant, Anthony DeBona, was condemned to pay the sum of $456.20.
Since the limit of liability of the insurer as restricted by the policy is the sum of $10,000.00, that sum must be prorated between Marshall Landrum, individually, and Marshall Landrum, for the use and benefit of his minor daughter, Sally Landrum. See Smith v. Northern Insurance Company of New York (La.App., Orl., 1960), 120 So.2d 309. The proper formula to be used in making such proration is Marshall Landrum, individually, is to receive 3555/18555 of $10,000.00 or $1,915.93; Marshall Landrum, for the use and benefit of his minor daughter, Sally Landrum, is to receive 15000/18555 of $10,000.00, or $8,084.07. Both amounts aggregate the $10,000.00 liability of the insurer. Plaintiff, individually, and on behalf of his minor daughter, is entitled to a judgment against Anthony DeBona for the overplus.
The judgment appealed from will be amended to conform to the views herein expressed. We have decided to recast the judgment, and it is now ordered, adjudged and decreed that there be judgment in favor of Marshall Landrum, individually, and against the defendants jointly and in solido, for the full sum of $3,555.20 (the liability of New Amsterdam Casualty Company being limited to only $1,915.93 of said principal amount) and that plaintiff have judgment for the use and benefit of his minor child, Sally Landrum, against the defendants jointly and in solido, for the sum of $15,000.00 (the liability of New Amsterdam Casualty Company being limited to only $8,084.07 of said principal amount), said amounts to bear legal interest from judicial demand until paid. Defendants are cast for the costs in both courts.
Amended and affirmed.